## THE WINDHAM BANK *vs.* NORTON, CONVERSE & Co.

In an action on a bill of exchange, against the indorsers, the averments, in the declaration, of a due presentment of the bill and notice of its non-payment, are supported, by evidence of matter of excuse, or a waiver of demand and notice.

The whole rule applicable to the presentment of a bill of exchange for payment, by the holder, is, that it must be on the day on which the bill becomes due, unless it is out of the power of the holder, by the use of reasonable diligence, so to present it. Failure of such presentment is excused, by any inevitable or unavoidable accident, not attributable to the fault of the holder, provided he make a presentment, as soon as he is able.

A bill of exchange was deposited, by the holder, in the post-office, in season to reach the place where it was payable, before it fell due, by the regular course of the next mail ; and there was no reason to believe, that it would not be there duly delivered. It was actually sent by that mail, but by mistake of the postmaster, where it was mailed, the package containing it was misdirected, and in consequence thereof, was carried beyond its place of destination. The mistake being discovered, the bill was returned and reached the place where payable, on the day after it became due, which was Sunday. On the morning of the following day, the bill was delivered from the post-office to the agent of the holder, and payment demanded of the acceptér. Held, in such case, that the holder of the bill was not chargeable with a want of reasonable diligence.

This was an action of *assumpsit*, brought by the Windham Bank, as holders of a bill of exchange, against the defendants, as indorsers.

The bill of exchange referred to was drawn by George Hobart, of Norwich, in this state, upon Mansfield, Hall & Stone, of Philadelphia, and by them accepted, for $417.26 ; dated January 31, 1849, and payable four months after date, to the order of the defendants.

The declaration was in the common form, and contained the usual averments of a due presentment of the bill in question, and notice of its non-payment. The defendants pleaded the general issue, and the cause came on for trial, at Brooklyn, October term, 1851. The facts were found by the court, by agreement of the parties, as follows. Said bill of exchange, was, on the day of its date, accepted by said Mansfield, Hall & Stone, "payable at the Farmers and Mechanics' Bank," in the city of Philadelphia. On the —— day of February, 1849, the defendants procured said draft to be discounted by the plaintiffs, and then indorsed and delivered

it to them. During the same month of February, the plaintiffs forwarded said draft, by the United States' mail, to the Ohio Life and Trust Co., a banking corporation in the city of New York, for collection, and indorsed the same to their cashier, as follows : "Pay G. S. Coe, Esq., cashier, or order ; " signed, " Samuel Bingham, cashier." The bill, so indorsed, was, in a day or two thereafter, and in due course of mail, received by said Ohio Life and Trust Co. The third day of grace, June 3d, being Sunday,—the draft was actually due and payable on Saturday, June 2d. During the year 1849, there were two mails per day, each way, between New York and Philadelphia,—those for the latter place, leaving New York, one at nine A. M., the other at four and a half P. M., and both due at Philadelphia, in five hours from their departure. The Farmers and Mechanics' Bank were the Philadelphia correspondents of the Ohio Life and Trust Co., and communications, by mail, passed between them daily. On the morning of June 1st, the cashier of the Ohio Life and Trust Co. inclosed this draft with others, addressed, in the proper and usual mode, to the Farmers and Mechanics' Bank, and deposited said letter in the United States' post-office, at the city of New York, in season for the afternoon mail of that day, for Philadelphia. That letter was duly deposited in said mail, and said mail left New York, and arrived at Philadelphia, in due and usual time ; but the mail-bags, containing the letters for Philadelphia, were, by the post-office clerks in the office at New York, marked to be forwarded to Washington, and were, therefore, not delivered at Philadelphia, but carried to Washington. At Washington, the mistake was discovered, and said mail-bags forwarded to Philadelphia, which place they reached in the course of Sunday, June 3d. On the morning of the next day, said letter, with the draft inclosed, was

delivered from the post-office at Philadelphia, to said Farmers and Mechanics' Bank, who, by their cashier, refused payment of the same, and between the hours of nine and ten A. M., of the day, placed said draft in the hands of a notary public, for protest. Said notary, between the hours of nine A. M., and three P. M., of said day, presented said draft at the counter of said bank for payment, and received for answer from said cashier, that he was ordered by the accepters not to pay it, and that, had he presented it on Saturday, June 2d, he should have given him the same answer. Said notary thereupon, on said 4th day of June, in due and proper form, protested said draft, and made out written notices to the drawer, and the several indorsers, of the non-payment of said draft, and inclosed said notices, with the notice of protest, in a letter, and on the same day, deposited the same in the post-office in said Philadelphia, duly addressed to George S. Coe, cashier of Ohio Life and Trust Co., New York, who had indorsed said draft to the Farmers' and Mechanics' Bank, and by whom said letter was, in due course of mail, received. Said Coe, on the same day in which he received them, inclosed said letter of protest and said notices, except the one to himself, in a letter duly addressed to the plaintiffs, and deposited the same in the city of New York, in season for the next mail. The same was, in due course of mail, received by the plaintiffs, who, on the day of the receipt thereof, inclosed said notices to the defendants, as indorsers, and said notice to said drawer, (his residence being unknown,) in a letter duly addressed to the defendants, and deposited it in the post-office at Windham, in season for the next mail, and the same was, in due course of mail, received by the defendants. Mansfield, Hall & Stone became insolvent, and suspended payment on the 12th day of April, 1849, and on the next day, sent to the Farmers and Mechanics' Bank, the following notice in writing.

" E. ·N. Lewis, Esq., Cash.

" You will please pay no more notes or drafts drawn by us, and payable at your bank, until further notice, as they will not be provided for.

. " Very respectfully yours,

" Mansfield, Hall & Stone."

No further notice was sent, and said bank, from that time forward, acted upon this order, and refused payment of all notes or drafts payable at the bank, by said firm. The business hours of the Philadelphia banks, were, in 1849, from nine A. M. to three P. M. Owing to the miscarriage of the United States' mail, as above stated, said draft was not presented for payment, on Saturday, June 2d, when it became due, and was never presented for payment at any other time than on said 4th day of June.

It has been the usage of the banks and merchants of this country, for the last forty years, to. make use of the United States' mail, in forwarding negotiable notes and bills of exchange, for collection or acceptance. It is the custom of the Windham Bank, and the four Norwich banks, to forward all paper in their hands, payable abroad, within five or eight days after it comes into their hands, without reference to the length of time it has to run.

The questions of law arising upon these facts, and on such further facts as the jury might rightfully infer, were reserved for the advice of this court.

*Edmund Perkins*, for the plaintiffs, contended, 1. That the undertaking of the endorser of a negotiable note, or bill of exchange, is, that the accepter, or maker, will pay the same at maturity, upon due presentment thereof, for that purpose, and that, if the accepters or makers do not so pay it, when duly presented, and the holder thereof shall give the indorser due notice of the fact, then said indorser will pay it. By the terms, due presentment at maturity, and due notice of dishonor, it is not meant, that the indorser is discharged in all cases, when

there is a failure to present at maturity, or to give notice in the usual time. If the holder uses due diligence, to make presentment and give notice at the day, and fails, the indorser would still be liable. Story on Bills of Exchange, § 205, 6. 7, 8, note, 259, 326, 327, 308, and note. 2 Greenl. Ev., § 195.

2. It was due diligence in the holder, to use the United States' mail, as the means of forwarding this draft for presentment. This is a means, sanctioned by general and long continued mercantile use, for such purpose. *Schofield* v. *Bayard*, 3 Wend., 488. There was, also, in this case, due diligence, as to the time of forwarding the draft. If the holder is justified in using the mail at all, there can be no other rule of diligence, as to the time when he may remit, than this,—that he must deposit the draft, duly addressed, in such time that, in the ordinary course of the mail, making full allowance for detention, it will reach the place of payment in season.

3. The accident which detained this draft was inevitable. When the draft was deposited in the mail, it was no longer under the control of the sender. A *superior force* had intervened. The contract between the indorser and holder is presumed to be made, with reference to the use of the ordinary mercantile mode of conveyance, the United States' mail. The officers of that mail thus become, and are to be treated as, the agents of both parties, and their negligence can not be charged on either party.

4. A declaration in the usual form, alleging due presentment and notice, is sustained by proof of any state of facts, which, by the custom of merchants, will excuse a failure to present and give notice. 2 Greenl. Ev., § 197. *Norton* v. *Lewis*, 2 Conn. R., 478. *Blakely* v. *Grant*, 6 Mass. R., 386. *Hopkins* v. *Liswell*, 12 Mass. R., 52. *Williams* v. *Mathews*, 3 Cowen, 252. *Hinsdale* v. *Miles*, 5 Conn. R., 331.

*Strong* and *Foster*, for the defendants, contended, 1. That demand of payment must be made on the day of the maturity of the bill. Story on Bills, § 324, 325, 328. (8th ed.) And

the rule is more strict in favor of the indorser, than the drawer. Story on Bills, § 327.

2. That the causes, which would excuse the non-presentment for payment, do not avail the plaintiffs. That the party sustains no injury, is not an excuse. Story on Bills, 327, 308. Story on Prom. Notes, § 257, 258, 265. The case of *Scofield* v. *Bayard*, 3 Wend., 488, is conclusive, in favor of the defendants.

3. That the declaration should have been varied, according to the fact, excusing the non-presentment.

Storrs, J. The defendants first insist, that the averments in this declaration, of a due presentment of the draft in question and notice of its non-payment, must be strictly proved, and that they are not sustained, by proof of the facts set up by the plaintiffs, by way of excuse. Whatever may be the course of authorities elsewhere, it is well settled here, that those allegations are supported by evidence of matter of excuse, or a waiver of demand and notice. *Norton* v. *Lewis*, 2 Conn. R., 479, and *Camp* v. *Bates*, 11 *id.*, 487, are decisive on this point.

The other and more important question in this case is, whether the plaintiffs are excused for the non-presentment of this draft for payment, on the day when it became due. The last day of grace being Sunday, it was payable on the preceding Saturday, which was the second day of June, 1849. This question depends on whether the plaintiffs are chargeable with negligence, in not presenting it on that day.

If the agent of the plaintiffs, to whom they sent it, to be forwarded for presentment and collection, and who transacted this business for them, was guilty of such negligence, it is, of course, imputable to the plaintiffs. And it is not important to this question, either that the defendants in fact sustained no damage, by the draft not having been presented for payment, when it fell due, or that it would not have been paid by the acceptor, if it had then been presented. The indorser, on a question of due presentment for payment, is

not affected by either of these circumstances. Nor indeed do the plaintiffs claim to recover, on either of these grounds.

The question of negligence here presented depends on the inquiry, whether, under the circumstances of this case, the delay of the plaintiffs' agent, in not forwarding this draft to Philadelphia, until the last· mail left New York for that place, on the day next preceding that on which the draft fell due, constituted a want· of reasonable or due diligence, in regard to its presentment. We say, under the circumstances, because there is. no positive or absolute rule of law, which determines within what precise time the holder of a bill of exchange must, in all cases whatever, or at all events, avail himself of the authorized mode of transmission·adopted in this instance, to forward such paper for presentment. The general principle, established by all the adjudged cases, as well as the approved elementary writers, is, that reasonable diligence in the presentment of a bill for payment, is required of the holder, and that, therefore, if there has been no want of such diligence, he is excused. Story on Bills, ch. 10. Chitty on Bills, ch. 9, 10. Story on Prom. Notes, ch. 7, § 368. *Patience* v. *Townley*, 2 Smith's R., 223, 224.

In applying this principle, the general rule is, that it must be presented for payment, on the very day on which, by law, it becomes due, and that, unless the presentment be so made, it is a fatal objection to any right of recovery against the indorser. But, although this is the general rule, it is not an universal one, and prevails only under the qualification, which is really a part of the rule itself, that there is no negligence or want of reasonable diligence, in not making such presentment. The whole rule, therefore, more properly stated, is, that the presentment must be on the day on which the bill becomes due, unless it is not in the power of the holder, by the use of reasonable diligence, so to present it. By the very statement of this rule, as thus fully expressed, it is plain that, on the question, whether the holder is excused on this ground, for not thus presenting it, or, in other

words, whether there was negligence on his part, or a want of reasonable diligence, no absolute or positive rule can, from the nature of the case, be laid down, which shall apply under all circumstances. We have no evidence of any general custom of merchants, in regard to the precise time, within which mercantile paper is usually forwarded, in order to be presented for payment, so that the law merchant furnishes us no guide on this point. And it is clear, that the strict rule of the common law, by which an inability to perform the terms or condition of a contract, by reason of inevitable accident or casualty, constitutes generally no excuse for their non-performance, is not applicable to mercantile instruments of this description. Therefore, the excuse for non-presentment in this case, presents the ordinary question of negligence. That question may, and often does, depend on such a variety of circumstances, or those of such a peculiar character, that it is very difficult, if not impossible, to reduce them to any fixed or invariable rule. But, in regard to such a question, as applicable to the non-presentment of a bill or note, when it is due, it is considered a well settled rule, that such want of presentment is excused, by any inevitable or unavoidable accident not attributable to the fault of the holder, provided there is a presentment by him, as soon afterward as he is able; by which is intended that class of accidents, casualties or circumstances which render it morally or physically impossible to make such presentment. Judge Story, in speaking of this ground of excuse, says : "It has been truly observed, by a learned author," referring to Mr. Chitty, "that there is no positive authority in our law, which establishes any such inevitable accident to be a sufficient excuse for the want of a due presentment. But it seems justly and naturally to flow from the general principle, which regulates all matters of presentment and notice, in cases of negotiable paper. The object, in all such cases, is, to require reasonable diligence on the part of the holder; and that diligence must be

measured by the general convenience of the commercial world, and the practicability of accomplishing the end required, by ordinary skill, caution and effort." And he cites the remark of Lord Ellenborough in *Patience* v. *Townley*, (2 Smith's R., 223, 224,) that due presentment must be interpreted to mean, presented according to the custom of merchants, which necessarily implies an exception, in favor of those unavoidable accidents, which must prevent the party from doing it within regular time. (Story on Bills, § 258.)

Applying these principles to this case, we are of opinion that the plaintiffs are not chargeable with a want of reasonable diligence.

No fault or impropriety is imputable to them, by reason of their having selected the public mail, as the mode of forwarding the draft in question, to the bank in Philadelphia, where it was payable. It is properly conceded by the defendants, that such mode of transmission was in accordance with the general commercial usage and law, in the case of paper of this description. Indeed, it is recommended in the books, as the most proper mode of transmission, as being the least hazardous, and therefore preferable to a special or private conveyance. But, although the public mail was a legal and proper mode by which to forward this paper, it was their duty to use it in such a manner, that they should not be chargeable with negligence, or unreasonable delay. If, therefore, they put the draft into the post-office, at so late a period that, by the ordinary course of the mail, it could not, or there was reasonable ground to believe that it would not, reach the place of its destination, in season for its presentment, when due, we have no doubt that there would be, on their part, a want of reasonable diligence, which would exonerate the indorser. On the other hand, to throw the risk of every possible accident, in that mode of forwarding the draft, upon the holder, where there has been no such delay, would clearly be most inconvenient, unreasonable

The Windham Bank *v.* Norton, Converse & Co.

and unjust, as well as contrary to the expectation and under-
standing of the indorser, who is presumed to be aware of
the general usage and law, in regard to the transmission, by
mail, of this kind of paper, and must therefore be supposed
to require only reasonable diligence in this respect, on the
part of the holder ; and would; indeed, be inconsistent with the
rule itself, which sanctions its transmission in that manner.
It has been suggested, that the principle should be adopted,
that when the holder resorts to the public mail, he
should be required to forward the presentment, at so early
a period, that if by any accident it should not reach the
place of its presentment, in the regular course of the mail,
there should be time to recall it, and have it presented when
and where it falls due ; or that, at least, it should be for-
warded in season to ascertain, whether it reached there by
that time, and to make such a demand or presentment for
payment, as is required in the case of lost bills. We find
no authority whatever for any such rule, nor would it, in
our opinion, comport with the principle now well established,
requiring only reasonable diligence, on the part of the
holder, or with the policy which prevails in regard to such
commercial instruments. It would, in the first place, be the
means of restraining the transfer of such paper within such
a limited time as to impair, if not to destroy, its usefulness
and value, arising out of its negotiable quality ; and, in the
next place, it would, in many cases, be wholly impracticable.
The casualties, incident to this mode of transmission, are
most various in their character, and can not, of course, be
foreseen ; and they might, in the case of forwarding mer-
cantile paper, be such as to render it impossible to ascertain
its miscarriage, or to recall it, in season to remedy the diffi-
culty. In the case of the draft now before us, for example,
if it had been placed, by the plaintiffs, in the post-office at
Windham, where they were located, and transacted their
business, for transmission, direct from thence to Philadelphia,
on the very day when they became the holders of it, which

was between three and four months before it became due, and, by an accident or mistake of the postmaster in the former place, similar to that which occurred in this case, at New York, it had been mailed to one of the most distant parts of our country, or to a foreign country, (which would not have been more singular, than that it should have been mistakenly mailed, as in the present case, for Washington,) it might not have been practicable for the plaintiffs to learn the accident, or obviate its effect, before the paper fell due. In short, such a rule as that suggested, would be merely artificial in its character, productive of great inconvenience and injustice in particular cases, without any corresponding general benefits, and change the whole course of business, in regard to a most extensive and important class of mercantile transactions. Nor has any other arbitrary or positive rule been suggested, which is not equally obnoxious to the same or similar objections.

The only remaining enquiry is, whether the plaintiffs are chargeable with negligence, for not forwarding the draft in question, by an earlier mail from New York to Philadelphia. It was sent by the usual, legal, and proper mode. It was deposited in the post-office, in season to reach the place where it was payable, before it fell due, by the regular course of the next mail ; and there was no reason to believe, that it would not be there duly delivered. It was actually sent by that mail, and, but for the mistake of the postmaster where it was mailed, in misdirecting the package containing it, would have reached its proper destination, and been received there in season for its presentment, when due. It in fact reached that place, when it should have done ; but was carried beyond it, in consequence of that mistake. As that mistake could not be foreseen or apprehended by the plaintiffs, it is not reasonable to require them to take any steps to guard against it. Indeed, they could not have done so, as they had no control or supervision over the postmaster. They had a right to presume, that the latter had

done his duty.   They could not know, that he had misdirected the package, until it was too late to remedy the consequences.   The occurrence of the draft being sent beyond its place of destination, was, therefore, so far as the plaintiffs were concerned, an unavoidable accident.   It happened, not in consequence of any delay of the plaintiffs, in putting the draft into the post-office, at so late a period that it could not, or probably would not, reach its destination in due season, but merely in consequence of the act of the official to whom it was properly confided, done after it was properly in his charge, by the plaintiffs, for transmission. The accident, moreover, was of a very peculiar and extraordinary character, and quite different from those which are ordinarily incident to that mode of transmission, and against which it would be extremely difficult, if not impossible, to guard.   It would have been equally liable to occur, at any time, when the draft should have been placed in the post-office.   It was not owing, in any sense, to the fault of the plaintiffs, but solely to that of the postmaster.   Under these circumstances, we do not feel authorized to impute any blame or negligence to the plaintiffs.   We are, therefore, of opinion, that judgment should be rendered for the plaintiffs.

In this opinion the other judges concurred.

Judgment for the plaintiffs.