McDonald v. Mosher.

## GEORGE MCDONALD

v.

## BYRON MOSHER, FOR USE, ETC.

*Negotiable Paper—Checks on Local Banks—When to be Presented— Excuse for Delay—Evidence.*

1. To fix the liability of a drawer of a check on a local bank in case of non-payment, the payee is required to present it not later than the next business day after its reception.

2. A violent storm, and the fact that the holder resides some distance from the bank, will not excuse a failure to present such check within the time limited.

The case of *Montelius* v. *Charles*, 76 Ill. 303, distinguished.

[Opinion filed June 9, 1887.]

APPEAL from the Circuit Court of La Salle County; the Hon. HIRAM T. GILBERT, Judge, presiding.

Messrs. RICHOLSON & GENTLEMAN, for appellant.

" In order to fix the liability of the drawer of an inland bill or check in case of non-payment, the holder should present the bill or check to the person or bank on which it is drawn within business hours of the day next succeeding the receipt of the paper and give notice of the dishonor to the drawer." Bickford v. First Nat. Bank, 42 Ill. 238, 244; Munn v. Burch, 25 Ill. 40.

" It may safely be stated as a rule that the holder of a sight bill, in order to change the drawer, must put it into circulation or present it for payment, at the farthest, on the next

McDonald v. Mosher.

business day after the reception, if within reach of the person upon whom it is drawn." Chit. on Bills, 382; Strong v. King, 35 Ill. 9, 18.

"If the person who receives a check and the banker on whom it is.drawn are in the same place, the check must, in the absence of special circumstances, be presented for payment on the day after it is received." Benjamin's Chalmers' Digest of Law on Bills, 263. We claim here that special circumstances must not be the result of acts of the holder, but such as could not have been reasonably avoided by him.

In Stevens v. Park, 73 Ill. 387, it is held that the holder of a check must present it for payment, and that, "by his omission he assumed the burden of showing that the failure to obtain payment of the check was through no fault of his." Also in Willetts v. Paine, 43 Ill. 432, it is held that, "in such cases the law presumes an injury until the contrary is proven." The preponderance of the evidence is far from being with the plaintiff in the court below, and without such preponderance he ought not to have recovered.

Messrs. Bull, Strawn & Ruger, for appellee.

"Due diligence is. the only thing to be looked at, whether the bill be a foreign or an inland one, and whether it be payable at sight or so many days after, or in any other manner." Montelius v. Charles, 76 Ill. 303, 307.

"The law is well settled that all drafts, whether foreign or inland bills, must be presented to the drawee within a reasonable time, and, in case of non-payment the notice must be given promptly to the drawer to charge him. But what is a reasonable time under all the circumstances, is sometimes a most difficult question. The general doctrine is, each case must depend on its own peculiar features and be judged accordingly. Montelius v. Charles, 76 Ill. 303; Stevens v. Park, 73 Ill. 387.

In the absence of any qualifying circumstances the holder should present the bill to the person or bank on which it is drawn, if within reach of such drawee, within business hours of the day next succeeding the receipt of the paper, and give notice.of the dishonor of it to the drawer. Bickford v. First Nat. Bank, 42 Ill. 238; Strong v. King, 35 Ill. 9.

This rule applies to bank checks as well as to bills of exchange, strictly so called. But in case of either the rule is modified to a limited degree by the relations of the parties, their circumstances, manner of doing business and facilities for making prompt presentation of the paper for payment." Allen v. Kramer, 2 Ill. App. 205, 209.

BAKER, P. J. On the 17th day of December, 1884, Byron Mosher, who was acting as servant or agent of Harriet Mosher, the usee, delivered to George McDonald at Earlville, certain hogs, and received in payment therefor a check for $54 on the " Exchange Bank " of Earlville. The evidence is conflicting upon the question whether or not the check was so received after the close of banking hours on said day, and it is not necessary now to settle such conflict in the testimony. As matter of fact, the check was not presented for payment upon that day, or upon the following day, which was the 18th day of December. The bank was open and honored its checks all day on the 18th but did not open its doors on the 19th day of the month. Mosher lived in the country, some two miles from the village, and on the evening the check was given him he took it home with him, and on his return to Earlville on the morning of the 19th he found the bank had failed.

He states in his evidence that the next day after he got the check " it was very cold and was snowing and drifting badly, and was away below zero." In answer to a direct and leading question which was objected to on the trial, he says that it wa not practicable for him to go to town, taking into consideration the weather, his situation and all the surrounding circumstances.

On his cross-examination he states: " The next day I worked, fed eight horses, cattle, fifty-five or sixty head of hogs, cleaned and bedded the hogs, attended to the horses and cattle as usual, watered them and fed them regularly. Did my work just the same as I did the day before and the day after, did extra work that day because it was very severe weather. The chores and the work I had to do and the drifted roads and rough whether was all that prevented me from going to town on the 18th." He also says in a re-examina-

tion, that " snow drifted on the 18th so it was difficult and dangerous to drive into town, and the storm eased up at 9 or 10 o'clock p. m."

The testimony of other witnesses is to the effect that the 18th was a cold winter day, that the wind was blowing and it was snowing and drifting somewhat, but that outdoor work was attended to as usual, and hogs were brought in from the country a distance of two and a half miles, and that the roads into the country were not in bad condition.

The case was tried before a jury in the La Salle County Court on an appeal from a Justice of the Peace, and the verdict and judgment were for appellee Mosher, for the amount of the check.

The question in the case is, whether appellee after receiving the check from appellant used due and proper diligence to get it checked at the bank. In Strong v. King, 35 Ill. 9, it was said that the holder of a sight bill, in order to charge the drawer and indorsers, must put it into circulation or present it for payment, at the farthest, on the next business day after its reception, if within reach of the person upon whom it is drawn. In Bickford v. First National Bank, 42 Ill. 238, it was held that in order to fix the liability of the drawer of an inland bill of exchange or check, in case of non-payment, the holder should present the bill or check to the person or bank on which it is drawn, within business hours of the day next succeeding the receipt of the paper, and give notice of the dishonor to the drawer. In Strong v. King, *supra*, Chitty on Bills, 382, was cited as authority in support of the law as then declared; and that authority states it is settled and may be relied upon as the fixed rule in the case of a bill or note payable on demand, given by way of payment, and payable in or near the place where it was given, and payable by or at a banker's, it suffices to present it for payment at any time during banking hours on the day after it is received. It is to be borne in mind that a check is presumptively drawn on a previous deposit of funds, and is an absolute appropriation of so much money in the hands of the bank, to remain there until called for. Stevens v. Park, 73 Ill. 387.

We do not consider Montelius v. Charles, 76 Ill. 303, cited by appellee, as in point with the case at bar, for there a sight draft was drawn by a banker at Piper City on a bank in Chicago, and was on the same day mailed to Dakota and immediately on its arrival there was negotiated, and it was held that where an inland bill of exchange, payable at sight, is immediately put in circulation, there is no fixed period in which it must be presented for payment in order to hold the drawer, and that the only rule is that it must be presented in a reasonable time, and that what is a reasonable time depends upon the peculiar facts of each case viewed in the light of commercial usage. But in the case now before us, only an ordinary check on a local banker is involved, and it is the general understanding that a check payable at the place where it is given, is not intended by the drawer to be long in circulation, and presumably it will be presented for payment on that or the following day.

Such check differs from a banker's draft on another place, which is known to all parties to have been intended to be in circulation, and not so promptly presented for payment as a check. Chitty on Bills, 387. In Montelius v. Charles, in speaking of the matter of a sight draft drawn by a banker at one place and directed to a bank located elsewhere than the place where it was made and received, Justice Scott said: "Bills having the quality of negotiability are intended, in some degree, to be used as a part of the circulation of the country, and are indispensable in the conduct of extended commercial transactions. They afford a safe and convenient mode of making payments of indebtedness between distant points.

"Banking houses that, for a consideration, issue such bills, must be understood to do so in accordance with the known custom of the country—that they will be put in circulation for a limited period. If this were not so, their value would be greatly depreciated, and their utility in commercial transactions would be destroyed." In our opinion, the doctrine announced in Montelius v. Charles, does not apply to the case of a check on a banker, payable at the place where it is made and received; but that such check, as against the drawer and in favor of the

party to whom he delivers it, should be presented for payment during banking hours of the next day after it was received by the latter; and that if this is not done, and a loss is occasioned by the subsequent insolvency of the drawee, the drawer is discharged by the delay. Chitty on Bills, 513; 2 Parsons on Notes and Bills, Ch. 3. In the latter authority, on page 71, it is said that the fact that a check is presumed to be drawn against deposited funds, makes it of even greater importance than in the case of a bill that it should be presented.

It would seem the real issue here is whether the evidence shows a legal and sufficient excuse for not presenting the check for payment on the day succeeding the day it was given to appellee.

It clearly appears that appellant had ample funds in the bank at the date of the check, and down to the time the bank failed, and that if the check had been presented on the 18th of December, it would have been paid. Whenever it is morally or physically impossible for the holder of commercial paper to make demand for payment, it is a sufficient excuse, as the law compels no one to do what he can not perform. The impossibility must be actual, and not merely hypothetical; and though it need not be absolute, yet no slight difficulty will avail. Parsons on Notes and Bills, pp. 443 and 460.

In Barker v. Parker, 6 Pick. 80, the maker lived twenty miles distant by the cross-roads, and the court then said: "The fact that Monday was a very rainy day, can form no excuse. If it had appeared that a violent tempest had so broken up or destroyed the roads, or obstructed them, that they were impassable, perhaps it might have been considered a providential interception, on account of which the plaintiff would not have been charged with negligence."

At page 461 of Parsons on Notes and Bills, it is said that a violent storm will not excuse non-presentment at maturity, though a violent tempest, which has so broken up the roads or obstructed them as to prevent passing, might have that effect. The learned author adds, however, that there is no absolute presumption of law that such excuse is sufficient, but it only raises a *prima facie* presumption, more or less strong accord-

ing to circumstances, and constituting an excuse, not in *law*, but in *fact*, if it comes within the meaning and scope of the rule of impossibility.

Tested by the doctrine we have stated, the evidence does not show a sufficient excuse for the non-presentment of the check for payment on the 18th of December. It does not appear it was physically impossible for appellee to have traveled the distance of two miles to the village on that day. While the law does not require it should be made manifest it was absolutely impossible so to do, yet it does require it should be shown it was actually and reasonably impossible to do so. If other persons could bring hogs to town on that day from a greater distance than his home, it is difficult to see why it was impossible for him to bring the check. He came to the village early on the morning of the 19th, and it does not appear that his progress was interrupted by snow drifts, or that he met with any difficulty. Another witness drove on that road on the 19th, and he swears the roads were not bad, that the traveling was good and that there were no snow drifts to speak of.

He does not himself swear that the road was impassable either on the 18th or the 19th. His strongest statement by far is that the snow drifted on the 18th so it was difficult and dangerous to drive into town. This may be regarded as the mere expression of an opinion, and was entitled to but little weight in the light of the fact that other persons drove to town that day from a greater distance and hauled hogs there for the market. The mere fact the trip would have been a difficult one, is no sufficient excuse. It does not appear to what extent it would have been dangerous to drive. The evidence does not show appellee could not safely have walked the required two miles. It is unreasonable to say from the evidence that appellee, if he had known that the bank would fail and had believed he would lose the $54 unless he presented the check on that day, would have stayed at home. But, even if this could reasonably be said, yet it would not be a valid excuse for not going. One may be willing to sacrifice a sum of money, large or small, rather than take a cold, dis-

agreeable and difficult walk or ride, and yet this fact affords no just cause for the conclusion that it was reasonably a physical impossibility for him to make such trip.

In our opinion the evidence does not support the verdict, and the finding of the jury was so against the law and the evidence that it was error to overrule the motion for a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*