BLAINE S. VILES

*vs.*

S. D. WARREN COMPANY

Kennebec.      Opinion, January 12, 1934.

*Locke, Perkins & Williamson,* for plaintiff.
*Bradley, Linnell, Jones, Nulty & Brown,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

PATTANGALL, C. J.   On report. Agreed statement of facts. Assumpsit on the common counts. Plea, general issue and brief statement of payment by check of the amount claimed. Plaintiff admits receiving check, which it is agreed was not paid by reason of the insolvency of the bank on which it was drawn. Defendant's position is that had the check been presented for payment within a reasonable time, plaintiff would have received his money, and that failure to so receive it was due to plaintiff's negligence. The details of the transaction, as fully and clearly stated in the record, may be summarized as follows.

It appears that the defendant was indebted to plaintiff; that their places of business were some sixty miles apart; that defendant mailed a check to plaintiff, payable to plaintiff's order, for the full amount of the debt, with a voucher attached bearing the endorsement "Account poplar contract, $2,000"; and that it was received at plaintiff's office on the following day. The next morning the check was taken from the envelope by plaintiff's bookkeeper, who prepared a deposit slip to accompany it when banked and set the documents aside for plaintiff's attention. Plaintiff was not at his office on the day the check arrived nor on the following day until after banking hours, when he first learned of its arrival. He then endorsed it and the next morning it was deposited in the local bank and forwarded in the regular course of business, arriving at the bank on which it was drawn one day too late to be cashed on account of the closing of that bank. Defendant had, at all times, a sufficient deposit to meet the check. The sole issue is whether or not failure to deposit the check on the day after its arrival at plaintiff's place of business constituted negligence and relieved defendant from loss. The facts being undisputed, this becomes a question of law. *Comer* v. *Dufour*, 51 Am. St. Rep., 89.

Sec. 186, Chap. 164, R. S. 1930, provides: "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay," an enactment declaratory of the common law.

Sec. 193 of the same chapter provides that "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

The general rule governing the question of reasonable time for presentation of checks for payment is well established. If the bank on which the check is drawn and the payee are in the same place, the check should be presented during banking hours of the first secular day following its receipt; if in different places, it should be deposited in the mail in like time. Special circumstances may excuse delay in either case, but in their absence the rule is absolute.

*Veazie Bank* v. *Winn*, 40 Me., 60; 5 R. C. L., 509-10, and cases cited.

Plaintiff admits the rule but contends that under the circumstances existing in this case, the delay of one day beyond the time fixed by it was not unreasonable. The points relied on are (1) that plaintiff did not personally receive the check until the day after it came to his office and had no reason to anticipate it at that particular time; (2) that the check being accompanied by a voucher, the acceptance of it automatically receipted in full the account for which it was given so that it required his personal attention and could not properly have been looked after by his bookkeeper; (3) that his absence from his office was occasioned by his being engaged in important public business in connection with the state Senate of which he was a member.

These reasons for delay beyond the time fixed as reasonable under normal conditions are urged as sufficient to take the case out of the general rule. We cannot agree with that conclusion.

Sec. 185, Chap. 164, R. S., 1930, defines a check as " a bill of exchange drawn on a bank, payable on demand" and adds that "except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

We have already quoted the section immediately following this definition, which fixes the time for presentation of a check for payment as within "a reasonable time." Some light as to what suffices as an excuse for not presenting within the time prescribed by the general rule may be derived from Sec. 81, Chap. 164, R. S., 1930, which refers to the presentment for payment of negotiable paper generally and excuses for delay in presentment. "Delay in making presentment for payment is excused when the delay is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct or negligence." The language of this section is somewhat stronger than that used in Section 186 but is not inconsistent with it.

The authorities are agreed that certain circumstances of a general nature excuse delay. These are listed by Story, Parsons, Randolph and Daniels and quoted in many legal opinions substan-

tially as follows: (1) Inevitable accident or overwhelming calamity; (2) prevalence of a malignant disease which suspends the ordinary operations of business; (3) the presence of political circumstances amounting to a virtual interruption and an obstruction of the ordinary negotiations of trade; (4) the breaking out of war between the country of the maker and that of the holder; (5) the occupation of the country where the parties live, or where the note is payable, by a public enemy, which suspends commercial intercourse; (6) public and positive interdictions and prohibitions of the state which obstruct or suspend commerce and intercourse; (7) the utter impracticability of finding the maker or ascertaining his place of residence." *Young* v. *Exchange Bank of Kentucky*, 153 S. W., at 449.

In addition to these general circumstances, there are various special circumstances which may excuse delay. Inevitable or unavoidable accident not attributable to the fault of the holder that makes performance impracticable or impossible, "by which is intended that class of accidents, casualties or circumstances which render it morally or physically impossible to make such presentment." *Windham Bank* v. *Norton*, 22 Conn., 213.

Judge Story, in speaking of this ground of excuse, says, "It has been truly observed, by a learned author (referring to Mr. Chitty), that there is no positive authority in our law which establishes any such inevitable accident to be a sufficient excuse for the want of a due presentment. But it seems justly and naturally to flow from the general principle which regulates all matters of presentment and notice in cases of negotiable paper. The object in all such cases is to require reasonable diligence on the part of the holder; and that diligence must be measured by the general convenience of the commercial world, and the practicability of accomplishing the end required, by ordinary skill, caution and effort. . . Due presentment must be interpreted to mean presented according to the custom of merchants, which necessarily implies an exception in favor of those unavoidable accidents which must prevent the party from doing it within regular time." Story on Bills, Sec. 258.

The application of these rules to a particular set of circumstances is not free from difficulty. In examining cases in which the

point is discussed, we have not confined our search to those relating to checks alone but have found it helpful to extend it to those concerning other forms of negotiable paper governed by similiar rules.

In *Barker* v. *Parker*, 6 Pick., 80, the court saw no excuse in the fact that on the day when presentment should have been made there was a heavy rainstorm and the plaintiff lived twenty miles distant, saying that "if it had appeared that a violent tempest had so broken up or destroyed the roads or obstructed them, it might have been considered a providential interception on account of which plaintiff would not have been charged with negligence."

Somewhat similar circumstances failed to excuse in *McDonald* v. *Mosher*, 23 Ill. App., 206. Here, the jury found against the drawer of the check. The court reversed its finding saying: "It does not appear it was physically impossible for appellee to have traveled the distance of two miles to the village on that day. While the law does not require it should be made manifest that it was absolutely impossible so to do, yet it does require it should be shown that it was reasonably impossible to do so . . . . It is unreasonable to say from the evidence that appellee, if he had known that the bank would fail and had believed he would lose the $54 unless he presented the check on that day, would have stayed at home. But, even if this could reasonably be said, yet it would not be a valid excuse for not going. One may be willing to sacrifice a sum of money, large or small, rather than take a cold, disagreeable and difficult walk or ride, and yet this fact affords no just cause for the conclusion that it was reasonably a physical impossibility for him to make such a trip."

In *Wilson, Executrix* v. *Senier*, 14 Wis., 411, the Court said, "There can be little doubt that cases may arise where the illness of the holder will excuse, but to do so it would undoubtedly be required that the case come strictly within the rule laid down by Mr. Chitty, that the illness must be shown to have been so sudden and so severe as to have prevented the holder from employing another person to make the presentment, as well as to have precluded the possibility of his doing so himself."

"Illness, in order to constitute a sufficient excuse, must be that

of the holder or his agent and of such a character as to prevent due presentment by the exercise of due diligence. And where an endorser was called from home in consequence of the dangerous illness of his wife and left his house in care of a lad without authority to open letters, it was held that he had lost recourse against his prior endorsers by the consequent delay in giving notice. He should have left someone in charge with authority to open letters." 2 Daniel on Negotiable Instruments (6th Ed.), Sec. 1127, and cases cited.

In *Northwestern Coal Co.* v. *Bowman et al* (Iowa), 28 N. W., 496, the excuse offered and considered insufficient was that plaintiff's manager, who received the check, was also superintendent of its mine and that the demands of his employment were such that he could not without detriment to the business leave the mine and go to the nearest bank, distant some six or seven miles, oftener than once or twice a week. It was his usual practice to hold checks received by him until he could, without serious inconvenience and possible loss, leave the mine for the time required to attend to his banking and in the case under consideration he followed that practice, retaining the draft seven days. On these facts the plaintiff recovered in the circuit court but the judgment was reversed on appeal.

The foregoing cases are fairly illustrative of the position generally taken in jurisdictions where the question has arisen, and might be extended almost indefinitely. The uniformity of opinion is disturbed by only a few isolated decisions.

Plaintiff calls attention in his brief to *Peterson* v. *School Dist.* (Minn.), 203 N. W., 46. In that case a school teacher received, in exchange for school orders issued to her for wages, two checks drawn by the district treasurer on a bank located several miles from the place where she taught and boarded. She held them for three days while she continued to teach before she attempted to present them to the bank for payment. The case was tried to a jury which found for plaintiff. The verdict was affirmed on appeal, the court holding that it involved a jury question and that the decision found justification on the ground that "It was plaintiff's duty to teach every week day except Saturday and legal holidays. The school's closing hour was 3:30 p. m. and the bank's

4 p. m. She could not make presentment of her checks before Saturday, April 15th, unless she employed some one to go to the bank for her or closed her school for a day and went herself. It can hardly be assumed that the defendant expected or intended that she should suspend teaching in order to cash the checks, or that she would employ a messenger to present them for her. . . Moreover, it would be unreasonable to charge a young woman teaching a country school with the knowledge of usages which might properly be ascribed to men actively engaged in business."

In *Berry* v. *Harris* (Ark.), 54 S. W. (2nd), 289, the court held that plaintiff was not negligent in delaying three days to deposit a check, under the following circumstances. "The payee was a farmer, not engaged in a commercial business. He resided eight miles from his trading town, in which the bank was located upon which his check was drawn, and only three days intervened before the check was presented for payment."

In *Peterson* v. *School District*, supra, the facts not being in dispute, the conclusion of the court, that the question whether the check was or not presented within a reasonable time was for the jury, is out of accord with well established law; and the observation that plaintiff would not be expected to be familiar with legal principles governing commercial transactions does not seem to us a good reason for accepting her excuse for the delay. Even if regarded as sufficient in that case, it has no application to the case at bar.

*Berry* v. *Harris*, supra, so markedly disagrees with any decision with which we are familiar that we cannot give it weight in reaching our conclusion.

By the great weight of authority, the holder of a check is held to a high degree of care in protecting the maker from loss by reason of the closing of the bank against which the check is drawn. The rule appears to be based on sound grounds from every standpoint —legal, equitable and moral. The maker, when he deposits money to meet a check which he has mailed to his creditor, has a right to expect the recipient of the check to act promptly in presenting it for payment. There is little that the debtor can do to protect himself after the check leaves his hands. He must rely on his creditor

to observe the rule which the law merchant made familiar to business men generations before the Negotiable Instruments Law was enacted. He has every right to expect that the law will be complied with and that he will not be subjected to danger of loss because of avoidable delay in presenting his check for payment.

In the instant case, plaintiff, in the exercise of the degree of care which the law demands, should either have visited his office during some period of the day when his legislative duties permitted or have arranged with his bookkeeper to act in his stead. His office was in the state capital and accessible to the State House by telephone. If plaintiff's agent was negligent in not communicating with his principal and if that negligence caused the loss, plaintiff is responsible.

In so far as defendant suffers by plaintiff's failure to present the check within the time prescribed by law, plaintiff must stand the loss.

*Judgment for defendant.*