384 P.2d 64

**Gertrude V. BRADFORD, Executrix of the Estate of Clarence W. Bradford, Deceased, Plaintiff-Respondent and Cross-Appellant,**

v.

**Claude H. STURMAN and Cora C. Sturman, his wife, Defendants-Appellants and Cross-Respondents.**

No. 9230.

Supreme Court of Idaho.

July 26, 1963.

Paul C. Keeton, Lewiston, for appellants.

McCarthy & Adams, Lewiston, for respondent.

TAYLOR, Justice.

The plaintiff (respondent) brought this action to recover from defendants (appellants) upon the following promissory note:

"$ 1,000                               December 24    19 58

One year after date, without grace, I promise to pay to the order of Claude H. or Cora C. Sturman One thousand Dollars in lawful money of the United States of America, of the present standard value, with interest thereon, in like lawful money, at the rate of 5% percent per annum from Jan. 1, 1959 until paid, for value received. Interest to be paid at maturity and if not so paid the whole sum of both principal and interest to become immediately due and collectible, at the option of the holder of this Note. And in case suit or action is instituted to collect this Note, or any portion thereof I promise and agree to pay in addition to the costs and disbursements provided by statute, _____ Dollars in like lawful money, for Attorney's fees in said suit or action.

Due    Jan. 1,                        19 60        Elton D. Minkler

At    Lewiston, Idaho

No.                                                                          "

Endorsed, reverse side, as follows:

"Assigned to Clarence W. Bradford or Gertrude Bradford from Claude H. and Cora C. Sturman

By Cora C. Sturman"

The note was delivered to Bradfords on the date the endorsement was placed thereon, August 20, 1959, for a credit of $1,000 upon the purchase price of a residence property in Lewiston, purchased at that time by Sturmans from Bradfords. The note was not paid by the maker at maturity.

At the times involved Mr. and Mrs. Bradford and Mr. and Mrs. Sturman resided in Lewiston, Idaho.

Concerning demand for payment, the plaintiff, Mrs. Bradford, testified that the maker of the note was teaching school in Joseph, Oregon; that she knew he was in Lewiston, Idaho, and Clarkston, Washington, during Christmas vacation; that she tried for several days to get in touch with him by telephone; that she called his parents' home, his sister's home, and his fiancee's home, and finally contacted him

and asked him to come to her home to talk to her; that he came as requested on Sunday, January 10, 1960; that she then requested payment of the note, which he refused.

Concerning notice of dishonor, plaintiff testified:

"In a week or so after that I went to see the Sturmans. The date, to the best of my recollection, was on a Tuesday, the 19th of January. My son-in-law took me over to the Sturman home;"

and further that on that occasion she found only Mrs. Sturman at home; that she explained to Mrs. Sturman that Minkler had refused payment; that she needed the money and felt that Sturmans should pay it; that Mrs. Sturman said she "wouldn't pay it." Mrs. Bradford further testified that she would have gone to see Sturmans promptly after seeing Mr. Minkler, but her husband was ill and demanded constant care.

Mr. Bradford did not recover from the illness referred to; he died March 31, 1960. Plaintiff, Mrs. Bradford, was appointed executrix of his estate.

Minkler's voluntary petition in bankruptcy was filed August 3, 1960, and he was discharged May 3, 1961. Sturman was listed as a creditor.

Mrs. Sturman testified that it was in February or March, 1960, that Mrs. Brad-

ford came to her home and advised her that she had contacted Minkler and that he didn't have the money to pay the note, and suggested that she pay it, and that "I said, no, in the first place we didn't have a thousand dollars and the next place I said we assigned the note to you and that relieved us of any responsibility".

M.s. Bradford was the only witness for the plaintiff and Mrs. Sturman was the only witness for the defense.

The court found that the note was due and payable January 1, 1960; that the delay in presentment and demand for payment was due to the fact that plaintiff was unable to find the maker until the time demand was made; that the failure to present the note on the due date was excused; that plaintiff notified defendants of the nonpayment of the note in the spring of 1960; and that this "delay in giving this notice was due to the serious illness of Mr. Bradford, who died within about two months after the time when notice should have been given and this therefore excused."

As to attorney's fees, the court found that the provision therefor was left blank; that plaintiff offered no evidence of the amount of reasonable attorney's fees; and that the parties did not stipulate that the court might fix such fees, without evidence.

From the facts found, the court concluded that the endorsement on the note was not restrictive; that the plaintiff was not enti-

tled to award of attorney's fees; and that plaintiff was entitled to judgment in the amount of the principal and interest provided by the note.

Defendants brought this appeal from the judgment against them on the note, and plaintiff cross-appealed from the judgment denying attorney's fees.

On this appeal defendants contend the note became due December 24, 1959; that presentment on January 10, 1960, was not timely and the delay was unexcused; that notice of dishonor was not timely given and that the delay was unexcused; and that their endorsement thereon was restrictive and qualified, and not such as to render them liable as endorsers.

■■ With respect to the due date, defendants contend the marginal notation, "due Jan.. 1, 1960", was not a part of the note, and that the due date must be determined from the body of the instrument without reference to the marginal notation; that the note being dated December 24, 1958, the recital therein, "One year after date," makes the due date December 24, 1959.

"It is a general rule, well supported by authority, that marginal notations or memoranda, placed on a bill or note at the time of the execution thereof with the intention of making them a part of the contract, constitute a part of the contract, and must be construed with the body of the instrument to arrive at the true agreement existing between the parties." 13 A.L.R., Annotation, Bills and Notes, Writing on Margin, 252:

Also, 155 A.L.R., Annotation, 219.

The marginal notation of the due date appears to have been typed on the note in the same type as that appearing in other filled-in blanks thereon. There is nothing in the record to indicate that the marginal due date was not on the note at the time it was executed and delivered. As was said in In re Feldman, 387 Ill. 568, 56 N.E.2d 405, 155 A.L.R. 210:

"The record is barren of any evidence as to when this due-date blank was filled in and, accordingly, we must proceed upon the well-known presumption that it was done contemporaneously with the execution of the instrument." 56 N.E.2d at 407, 155 A.L.R. at 214.

Further, the body of the note provides for interest from January 1, 1959. So far as interest is concerned the "one year" commenced January 1st, not December 24th. It is evident the parties intended the note to mature January 1, 1960.

■ The uniform negotiable instruments law requires presentment to be made on the day the instrument falls due. The place of presentment provided by the note

was Lewiston, Idaho. No address was specified. Plaintiff was not required to go to Oregon, nor to Clarkston, Washington, to make presentment. 10 C.J.S. Bills and Notes § 404.

"Delay in making presentment for payment is excused where the delay is caused by circumstances beyond the control of the holder, and not imputable to his default, misconduct or negligence.

"When the cause of delay ceases to operate, presentment must be made with reasonable diligence." I.C. § 27–612.

The evidence here establishes that the delay in making presentment was excused.

■■ The conclusion of the court that defendants' endorsement was not restrictive was correct.

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." I.C. § 27–504.

Without more, the use of the word "assign" is not sufficient to clearly indicate an intention to be bound in some other capacity than that of endorser. Defendants rely upon Spencer v. Halpern, 62 Ark. 595, 37 S.W.

711, 36 L.R.A. 120, and Kane v. Eastman, 110 Cal.App. 753, 295 P. 63. In the Spencer case the endorsement was, "For value received, I hereby transfer my interest in the within note." The court adopted the reasoning in Tiedeman on Commercial Paper, § 265, as follows:

" 'The declaration that the payee assigns or transfers all his right, title, and interest in the paper would seem to limit in a most effective way the rights acquired by the transferee, to those which the transferror had therein, and thus prevent the writing from operating as an indorsement.' " 37 S.W. at 712.

In the Kane case the endorsement was:

" 'Date 11—19—23.
" 'For value received I hereby transfer, assign and set over unto Charles H. Kane all my right, title, interest in and to the within note.

" 'George A. Eastman.' "

The endorsement was held to be a qualified one, and constituted a mere assignment of the instrument. The court, nevertheless, held the assignor liable, saying:

"But an assignor, not being an indorser within the meaning of the above section * * * is not entitled to notice of dishonor, and he can only escape liability for the original debt by showing that the failure to present for payment or give notice of nonpayment, or

a lack of diligence in collecting the assigned note, has occasioned him damage." 295 P. at 65.

The Spencer and Kane cases are not applicable here for the reason that the "assignment" in this case was not limited to the right, title, or interest of the payees. However, even where the assignment is limited to the right, title, and interest of the endorser, or assignor, a majority of the courts hold the assignor liable as an ordinary endorser, reasoning that if it is the wish of the person making such an assignment to avoid liability as an endorser, "he should put that wish into words clearly indicating his intention." 8 Am.Jur., Bills and Notes, § 546. The view that such an assignment is not a qualified endorsement is typified by the case of Prichard v. Strike, 66 Utah 394, 243 P. 114, 44 A.L.R. 1348. There the endorsement was " 'For value received, I hereby assign, set over, and deliver unto A. M. J. Prichard all my right, title, and interest in and to the above note, * * *.' " The court cites authorities on both sides of the issue and said:

"Thus we think that one indorsing a negotiable promissory note and desiring to disclaim the responsibility of an indorser must, by appropriate words, clearly indicate such an intention or an intention to be bound in some other capacity, and that he does not do so by language as here assigning and deliver-

ing all his right, title, and interest in the note which is nothing more than what the law implies from a blank or general indorsement without words creating the implication, and hence is but the expression of a clause which the law implies, and works nothing." 243 P. at 117, 44 A.L.R. at 1352.

The Utah case is followed by an annotation in 44 A.L.R. at 1353, where the annotator summarized the cases cited as follows:

"Where the question of the liability of the 'assignor' has arisen the majority of the courts have taken the view that the liability of an ordinary indorser is imposed upon one who makes an assignment upon the back of commercial paper."

When a negotiable instrument has been dishonored by nonpayment, the holder must give notice of dishonor to the endorser in order to hold him liable thereon. If the endorser is not given such notice, he is discharged. I.C. § 27–701.

"Notice may be given as soon as the instrument is dishonored, and unless delay is excused as hereinafter provided, must be given within the times fixed by this act." I.C. § 27–714.

In this case the notice was required to be given not later than the day following dishonor. I.C. § 27–715.

"Delay in giving notice of dishonor is excused when the delay is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct or negligence. When the cause of delay ceases to operate, notice must be given with reasonable diligence." I.C. § 27–725.

The fatal illness of Bradford made it impossible for him to give notice of dishonor, and likewise prevented Mrs. Bradford from acting promptly in that regard. The cause was beyond their control and not imputable to their default, misconduct or negligence. Illness of the holder, where it is such as to prevent such holder from giving notice of dishonor, excuses delay in so doing. Viles v. S. D. Warren Co., 132 Me. 277, 170 A. 501; Wilson v. Senier, 14 Wis. 380; 10 C.J.S. Bills and Notes § 409c.

Plaintiff's cross-appeal challenges the ruling of the court denying the prayer for attorney's fees. The note contains an agreement by the maker to pay such fees, but the space provided for insertion of the amount agreed upon was left blank. In such case it is to be construed as an agreement to pay a reasonable sum therefor. Fies v. Storey, 37 Wash.2d 105, 221 P.2d 1031. Plaintiff alleged, and defendants denied, that $300 was a reasonable fee. No proof was offered on the issue raised, nor was it submitted for determination by the court without proof. The judgment denying plaintiff's attorney's fees was proper. 11 C.J.S. Bills and Notes §§ 653, 726.

Judgment affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.