## HAILEY *vs.* FALCONER.

[ASSUMPSIT ON PROMISSORY NOTE, BY ENDORSEE AGAINST ENDORSER.]

1. *Construction of special endorsement.*—An endorsement of a promissory note, before maturity, in these words, "For value received," &c., "I transfer unto J. P. H. all my right and title in the within note, to be enjoyed in the same manner as may have been by me," exempts the endorser from personal liability on the note.
2. *Error without injury.*—Where the record clearly shows that the plaintiff never can recover, the appellate court will not, at his instance, examine into the correctness of any of the adverse rulings of the primary court.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by John P. Hailey, against William Falconer, and was founded on the defendant's endorsement of a promissory note for $800, made by one F. A. Wingfield, dated Shreveport, La., February 22, 1850, and payable on the 1st November next after date, to defendant or order. The endorsement, which was also made and dated at Shreveport, was in these words: "For value received this 28th day of February, 1850, I transfer unto John P. Hailey all my right and title in the within note, to be enjoyed in the same manner as may have been by me," (signed by defendant.)

The declaration contained all the common counts, and five special counts. The first special count averred the making of the note, "at, to-wit, in Shreveport in the

Hailey v. Falconer.

State of Louisiana," and its subsequent endorsement by the defendant; " by which said endorsement, said defendant specially and fully transferred to said plaintiff all his right and title to said promissory note, and ordered and appointed said sum of money therein specified to be paid to plaintiff, and then and there delivered said promissory note," &c.; by means whereof, the said defendant became liable to pay," &c. The second count contained an additional averment, that Wingfield, the maker of the note, removed to Texas before the maturity of the note, and there remained " until at and after the maturity of the said note." The third count set out the note and endorsement, *in hæc verba,* " at, to-wit, in the county aforesaid," and averred non-payment by both the maker and the defendant. The fourth count averred the making of the note and endorsement at Shreveport, " to-wit, in the county aforesaid;" the removal of Wingfield to Texas, his insolvency, and death, before the maturity of the note; notice of these facts to defendant, demand, and failure to pay. The fifth count averred the making of the note and endorsement at Shreveport, " to-wit, in the county aforesaid;" that Wingfield removed to Texas before the maturity of the note, and there remained until at and after the maturity thereof; that he had no known place of residence or business in Louisiana before and at the time of his removal; that he was then wholly insolvent, and so remained until his death, and, by reason of such insolvency, plaintiff could not have recovered from him the amount of money in said note specified; that Wingfield afterwards, but before the maturity of said note, departed this life; that in consequence of these facts no demand of payment was made at the maturity of the note, a demand in such case being excused by the laws of Louisiana; by means whereof, the defendant became liable, &c. The defendant demurred to each of these special counts, but his demurrer was overruled; and he then pleaded, "in short by consent, the general issue, payment, set-off, failure of consideration, and that the defendant received from the plaintiff, on the sale of said note, less than the face of it."

35

The evidence adduced on the trial, as stated in the bill of exceptions, showed that the note and endorsement were made in Louisiana; that the plaintiff gave the defendant five hundred dollars for the note; that Wingfield removed to Texas, and there died, before the maturity of the note; that he was insolvent, from about the 1st January, 1850, until his death; that he had no particular domicile in Shreveport before his removal to Texas; and that the defendant, a short time before maturity of the note, waived demand and notice. Each party also read in evidence to the jury several decisions of the supreme court of Louisiana, of which the bill of exceptions specifies only 14 La. Rep. 422, and 8 Martin's Rep. 709.

The court charged the jury as follows:

"1. That by the laws of Louisiana, which governed this case, the writing on the back of the note sued on, signed by the defendant, was not an endorsement guarantying the solvency of the maker of the note; and that they could not, therefore, find for the plaintiff on any of the special counts in his declaration, but must find for the defendant on all those counts.

"2. That the plaintiff was [not] entitled to recover on the common counts in the declaration, if they believed from the evidence that the defendant had borrowed of the plaintiff five hundred dollars, or other amount, and transferred to him the note sued on as collateral security for the re-payment of the money so borrowed.

"3. That if they believed from the evidence that the transfer of the note from defendant to plaintiff was made in consideration of the payment of five hundred dollars, or other sum, by plaintiff to defendant, then they must find for the defendant."

These charges, to which the plaintiff excepted, together with several rulings of the court on the evidence, are now assigned as error.

FAIR & WHATLEY, for the appellant.

WM. P. & T. G. CHILTON, and HILLIARD & THORINGTON, *contra*.

Hailey v. Falconer.

RICE, C. J.—The endorsement here relied on by the plaintiff is not in' the common form, but substantially different therefrom. It is not blank in the form of it, but completed by the endorser himself. The main question is, what is its character and effect.

A qualified endorsement is one which does not affect "the negotiability of the instrument, but simply qualifies the duties, obligations and responsibilities of the endorser, resulting from the general principles of law." Any words in an endorsement, which clearly demonstrate the intention of the endorser to make it a qualified one, will have the effect to make it such. This appears very satisfactorily from the *examples* of qualified endorsements given in the authorities; among which we find the following: an endorsement to A. "without recourse," or "at his own risk;" or "James Atkins, *with intent only to transfer my interest, and not to be subject to any liability in case of nonacceptance* or non-payment."—Story on Prom. Notes, §§ 138, 146, and notes thereto. Why are these given as *examples* of qualified endorsements? Because the words employed in each of them, although not the same, clearly demonstrate the intent of the endorser to make a qualified endorsement—to avoid personal liability on the instrument endorsed.

It is well settled, that where there are general words alone in an endorsement, they shall be taken most strongly against the endorser. But "it is a general and a reasonable rule, that more general words in an instrument shall be restrained by other expressions more limited in the same instrument;" and for the purpose of ascertaining the intent, every part and word of the instrument is to be considered.—Jackson v. Stackhouse, 1 Cowen, 126; Lyman v. Clark, 9 Mass. R. 235; Rich v. Lord, 18 Pick. 325; Chitty on Con. 85, and notes.

It is part and parcel of the endorsement under consideration, that the right and title transferred by it were "to be enjoyed in the same manner" by the endorsee as it might have been by the endorser. That part can no more be disregarded than any other part, if a meaning consistent with the other parts can be assigned to it. Such

meaning can well be assigned to it, under the rules stated
in the next preceding paragraph of this opinion.   Its
effect is to restrain the more general words in the other
parts of the endorsement.   It is special, and the special
controls and limits the general.   It is without meaning
or effect, unless it was intended to exempt the endorser
from personal liability on the instrument endorsed, by
providing that the endorsee should not enjoy the right
and title transferred to him, in a "*manner*" different from
that in which the endorser himself might have enjoyed
the same right and title.   The words of the endorsement,
taken together, and so reconciled as to allow some mean-
ing and effect to each word in it, naturally import no
more than mere substitution and subrogation—the substi-
tution of the endorsee for the endorser, and the subroga-
tion of the former to all the right and title of the latter
in the note, and to the manner of enjoying that right and
title.

It may be argued, that when an endorsement of a note
is in blank, or in the common form, one of the legal im-
plications from it is, that the endorsee may enjoy the right
and title to the note in the same manner as the endorser
might have enjoyed them.   Concede that to be so; yet be
it noted, that this is *only one* of the legal implications
from such endorsement; that there are *other* legal impli-
cations from it; that this single *one* does not impose upon
the endorser any personal liability on the instrument
endorsed; that one of the *others* does impose such personal
liability conditionally.—Story on Promissory Notes, §.135.
Now, when we find an endorsement, *completed* by the
endorser himself, and accepted in its completed form by
the endorsee, which expresses only *one* of the legal impli-
cations from an endorsement in blank, or in the common
form, and *the one* which does not impose upon the endorser
a personal liability on the instrument endorsed,—we feel
bound to decide, that the expression of *that one* excludes
every other legal implication which might impose such
liability upon him.—Webb v. Plummer, 2 Barn. & Ald.
746; Brown v. Byrne, 3 Ellis & Blackburn, (77 Eng. Com.
Law Rep.) 703; Humfrey v. Dale, 26 L. Jour. Rep. 147;

Q. B., reported in the July No., 1857, of American Law Register, 551.—" *Expressum facit cessare tacitum.*"—Chitty on Contracts, 24; Ogden v. Sanders, 12 Wheaton's R. 213, 341.

Entertaining these views, we hold, that the plaintiff cannot recover upon the endorsement, by the common law, or commercial law. The only chance, then, left for him, is the law of Louisiana, where the endorsement was made. And by that law, "the transferree of a note, not endorsed, but transferred by a special assignment of the payee, written on the back of it, cannot maintain an action against the transferror. He has no recourse on the transferror, when *the debt* (as here) *exists at the time of the transfer.*" What we have above called *the endorsement* here sued on, is, by the law of Louisiana, treated as a *special assignment*, or *transfer*, written on the back of the note. Martin v. McMasters, 14 Louisiana R. 420, and the sections of the Louisiana Code there cited.

As the plaintiff relies only upon the endorsement or special assignment hereinabove considered, and as it is clear he never can recover upon it, he has not been injured by any of the rulings of the court below, even if they are erroneous; and in such cases, a plaintiff is not entitled to a reversal.—Reese v. Harris, 27 Ala. R. 301; Shehan v. Hampton, 8 Ala. R. 942; Dunlap v. Robinson, 28 *ib.* 100.

Judgment affirmed.