MAINE TRUST & BANKING COMPANY *vs.* PATRICK J. BUTLER, impleaded, etc.

### March 12, 1891.

**Promissory Note—Indorsement — Liability, how Qualified.**—To limit and qualify an indorsement made upon the back of a negotiable promissory note, the indorser must clearly and unmistakably express his intention to exempt himself from future conditional liability; he must use the phrase "without recourse" or its equivalent.

**Same—Assignment—Liability as Indorser.**—The payee of such a note signed his name to an assignment thereof written out on the back of the same, when transferring it to another person for value. *Held*, that this was not a qualified indorsement, and that the payee was liable as an ordinary indorser.

Action brought in the district court for Hennepin county against defendant as indorser of a promissory note of $1,000. Trial before *Hooker*, J., (a jury being waived,) and judgment ordered for plaintiff. The defendant appeals from an order refusing a new trial. The instrument sued on is set forth in the opinion.

*T. R. Huddleston*, for appellant.

*George H. Taylor* and *Chas. J. Bartleson*, for respondent.

COLLINS, J. The defendant Butler, payee of the negotiable promissory note on which this action was founded, made and signed a writing on the back of it, thus: "For value received I hereby assign and transfer the within note, together with all interest in and all rights under the mortgage securing the same, to L. D. Cooke." It is contended by appellant that this was but a naked assignment of the paper, and that Butler cannot be held as an indorser of the same.

We have carefully examined the authorities at our command, and have been unable to add a single one to those cited by appellant's counsel in support of his position, namely, *Hailey* v. *Falconer,* 32 Ala. 536, and *Aniba* v. *Yeomans,* 39 Mich. 171. In the Alabama case the payee of the note wrote these words upon its back: "For value received * * * I transfer unto J. P. Hailey all my right and title in the within note, to be enjoyed in the same manner as may have been by me," signing the same. It was held that this was a qualified indorsement, exempting the signer from liability, precisely as if nothing had appeared but his name, and the words "without recourse" above or underneath it. In its opinion the court stated the law to be that any words in an indorsement which clearly demonstrate an intention of the indorser to make it a qualified one will have that effect. The rule on this subject was correctly stated beyond a doubt, but misapplied, in our judgment. We think this apparent from the examples of qualified indorsement given by the court in support of its position. All clearly demonstrated the indorsers' intention to exempt themselves from future liability, in the plainest language. It was said, among other things, that a design to qualify the indorsement was apparent from the use of the words, "to be enjoyed in the same manner as may have been by me," the effect being to restrain the more general words found in other parts of the indorsement; that they must be given effect, and were meaningless unless intended to exempt the indorser from liability by providing that the indorsee should not enjoy the right and title transferred to him in a "manner" different from that enjoyed by the indorser himself. The conclusion reached was largely made to depend upon the clause, "to be enjoyed in the same manner as may have been by me," and not upon the fact that the assignment was expressed, instead of being left for implication. There are no words of this import in the assignment now under consideration. But if the law was correctly determined in *Hailey* v. *Falconer,* the indorsement was *restrictive* as well as qualified, and this was the real question at issue in *Aniba* v. *Yeomans, supra.* There the indorsement made by the payee read: "I hereby transfer my right, title, and interest of the within note to S. A. Yeomans," but the controversy was not as to the liability of the

indorser,—it was whether the indorsee could recover of the maker as a *bona fide* holder for value. It was determined that he could not; that the right and title passing under the customary indorsement in blank was much greater than the mere right, title, and interest of the payee; and that no greater right, title, and interest than he had could pass under such a transfer. The indorsee could look to the maker, but not beyond nor differently. He could not be permitted to fall back upon the indorser, nor to collect from the maker in case the payee could not have collected. The result of this decision was to give to the indorsement a more restrictive effect than an indorsement "without recourse" would have had, for it is well settled that such an indorsement does not destroy the negotiable character of the paper upon which it has been placed. But the remark which counsel attempts to make pertinent here was clearly *obiter*, for the issue was, as before stated, as to the restrictive character of the indorsement, and not whether the indorser qualified a liability he would have assumed by the ordinary indorsement in blank.

The indorsement of a promissory note is commonly accomplished in the manner just mentioned. When so done, two contracts are entered into,—one, that of the sale or assignment, completely executed; the other, that of a future, but conditional, liability, executory and by implication from the sale and assignment. Both are as complete, however, as if each was expressed with great formality and precision above the signature. In the case at bar we find the executed contract carefully, but unnecessarily, detailed, and the question resolves itself into an inquiry whether, by reason of this particularity, a formal expression of that which the law would import from the signature alone, the other contract, executory as to future liability upon condition,—also imported from the bare signature of the indorser,—is negatived and has been excluded. It would seem obvious that, when writing out upon the back of the paper just what would have been inferred from his signature, the indorser has incurred no greater liability,—has done no more than he would, had he simply placed his signature there. How can it be said, then, that he has done less, in the absence of that clear declaration of his intent to exempt himself, mentioned in all of the authorities as necessary in the case of a

qualified indorsement? The reason given seems to be that because one part of this double contract of indorsement, always inferred, has been expressed, the other part, also always inferred, must, of necessity, be excluded. Whenever the view contended for by appellant has been adopted, it has been predicated upon the maxim, *expressio unius est exclusio alterius.* We agree with the author of one of the leading text-books, who asserts that the less common maxim, *expressio eorum quæ tacite insunt nihil operatur,* is the one which should obtain. Many examples could be given where the expression of things tacitly implied in contracts has no effect; for illustration, a written warranty of the quality of provisions would not exclude or negative the implied warranty of title. The appellant in this case, with much care, indicated his purpose to sell and transfer the note, but he failed to limit and qualify his indorsement by words which would clearly indicate such an intent, if in fact it existed. It was incumbent upon him to do so if he intended or expected to escape the liability of the ordinary indorser. The phrase "without recourse," or its equivalent, which must be used on such occasions, is a very simple one, and in every-day use. The appellant did not insert in his contract of indorsement this phrase, or words equivalent thereto. To relieve one who puts his name on the back of a negotiable promissory note from liability as an indorser he must insert in the contract itself words clearly expressing such an intention. Although the appellant's assignment of the paper was expressed instead of implied, · he did not thereby exempt himself from the liability of an indorser in blank. *Sears* v. *Lantz,* 47 Iowa, 658; *Adams* v. *Blethen,* 66 Me. 19; Daniel, Neg. Inst. § 688, notes *b* and *c;* Rand. Com. Paper, § 704; 1 Edw. Bills & N. § 398. See, also, *Dixon* v. *Clayville,* 44 Md. 573; *Kilpatrick* v. *Heaton,* 3 Brev. 92; *Shelby* v. *Judd,* 24 Kan. 161; *Dunning* v. *Heller,* 103 Pa. St. 269; *Richards* v. *Frankum,* 9 Car. & P. 221.

Order affirmed.

GILFILLAN, C. J., and DICKINSON, J., *(dissenting.)* We dissent. When the payee or indorsee of a promissory note merely writes his name on the back of it, the presumption is that he does it for the

purpose of a double contract,—a contract of transfer and a contract of conditional liability. In such case the law implies the two contracts, because, that being the form in which, by the law-merchant, the two contracts are entered into, it presumes the parties intended both. The implication is not made contrary to their manifest intention. All the authorities agree that by writing over the signature they may exclude any implication. The only difference in the cases is as to what will have that effect. In our opinion, when the writing expresses, no matter in what form, the purpose with which the name is indorsed, it excludes the implication of any other purpose. When the writing expresses one contract, the parties will be presumed to have expressed all they intended; the written will be presumed to be the entire contract. It shows that the parties were not content with the implication of intention which the law raises upon the bare signature on the back of the note; for why should they take pains to express in writing one of the contracts which would be implied from the bare signature, if they intended not only that contract but the other also?