GALE *v,* MAYHEW.

1. BILLS AND NOTES—ASSIGNMENT—NEGOTIABILITY.
   A negotiable note which is transferred by writing on the back,
   "I hereby assign my interest in this note to ——————,"
   is merely assigned and does not authorize the holder to sue
   in his own name under the terms of 3 Comp. Laws, § 10054,
   which affects only assignments of nonnegotiable choses in
   action.

2. SAME — NEGOTIABLE INSTRUMENTS LAW — QUALIFIED INDORSE-
   MENT.
   Nor is the writing equivalent to a qualified indorsement by
   adding "without recourse" or words of similar import.

3. SAME—PARTIES—QUALIFIED INDORSEE—STATUTES.
   An action under a qualified indorsement of a negotiable in-
   strument must, under the statute, be brought in the name of
   the assignor or indorser. Act No. 265, Pub. Acts 1905; 3
   Comp. Laws, § 10054.

Error to Kent; Perkins, J. Submitted February 14,
1910. (Docket No. 139.) Decided April 1, 1910.

Assumpsit by William H. Gale against Percy. G. May-
hew on a promissory note. A judgment for plaintiff is
reviewed by defendant on writ of error. Reversed, and
no new trial ordered.

*Kleinhans & Knappen,* for appellant.

*Smedley, Hall & Freeland,* for appellee.

STONE, J. From appellant's brief we compile the fol-
lowing statement of the facts in this case: The defendant
had for some time prior to November or December, 1907,
been employed by the Grand Rapids Felt Boot Company,
and while so employed became acquainted with one Wil-
liam R. Pelton. Pelton had been working there for about
20 years as millwright, and part of the time he had charge

of the carding and picking rooms.   The felt boot company had failed in May, and it was only a question of time before they would have to suspend operations.   Mr. Pelton looked into the cotton felt business with a view to getting capital interested and starting up such business, and also bought some second-hand machines at Seneca Falls, N. Y.   He and Mr. Mayhew had several conversations beginning with November, 1907, which finally culminated in a somewhat indefinite verbal agreement about January 1, 1908.   There is some conflict as to the terms of this agreement; Pelton contending that a partnership was contemplated, in which he was to give his machines at a valuation of $1,500, and that Mayhew was to put in $1,500. Mayhew contends that he would not consider a partnership, and offered to buy the machines, but that Pelton refused to sell them.   There was also talk of later forming a corporation, in which case Pelton was to receive $1,500 worth of stock for his machines.   Mayhew rented a building, and Pelton's machines, along with several others of different character, were there installed.   Pelton began installing his machines about January 25, 1908, and they were ready to operate somewhere between the latter part of February and the middle of March.   While the machines were being set up, Pelton drew wages amounting to $15 a week, and, after the machines began turning out stock, at the rate of $3 a day.   During the time the machines were being installed, Pelton and Mayhew were still negotiating about a partnership and about incorporation. Finally, upon February 22, 1908, the note and agreement herein involved were given.   They are as follows, being dated back to February 1, 1908.

"GRAND RAPIDS, MICH., February 1, 1908.
"Twelve months after date, for value received, we promise to pay to the order of William R. Pelton fifteen hundred and no /100 dollars, with interest at six per cent. semi-annually, covering machinery as per agreement of February 1.
"P. G. MAYHEW COMPANY, P. G. MAYHEW."

161 MICH.—7.

"Grand Rapids, Mich.

"Agreement for the sum of $1,500 in the form of a note for twelve months with six per cent. interest, payable semi-annually. I, William R. Pelton, have placed in the hands of Percy G. Mayhew three carding machines as delivered for use in the Michigan Felting Company, which shall entitle me, if desired, upon incorporation of this Michigan Felting Company, to fifteen hundred dollars' worth of shares in said corporation. And I further agree to give my services for the time of six months from the date of this agreement with the Michigan Felting Company at $3 per day, guaranteed to me upon the commencement of the making of stock.

[Signed]          "William R. Pelton.
                  "Percy G. Mayhew.

"Dated February 1, 1908."

There is a conflict of testimony as to just what these papers meant. Pelton claims that they covered an outright purchase of the machines. Mayhew contends that he was simply leasing the machines for a period of one year, and that the note was simply evidence of title, in order to protect Pelton's machines from fire loss.

About two or three months after Pelton began work, and about May 1st, acting in accordance with his claimed understanding of the agreement, Mayhew asked for the return of the note in question, offering at the same time to turn over to Pelton a number of insurance policies to secure Pelton for the loss of the machines in case of fire. This Pelton refused to do. Pelton continued working under the agreement until his period of six months, lacking one week, was up. He was, however, paid for the full six months. At the time they severed their business relations, July 25, 1908, they displayed considerable ill feeling toward each other. The latter part of the following January, Pelton sold the note to the plaintiff. The language by which this note was transferred is:

"I hereby assign my interest in this note to William H. Gale.

[Signed]          "W. R. Pelton."

The consideration for this transfer was $500 cash and

an agreement to give Pelton $1,000 worth of stock of the Gale Chair Company. The testimony shows that Pelton did not inform the plaintiff that there was a misunderstanding between himself and Mayhew concerning the note.

The note was not paid and this suit was brought thereon in the Kent circuit court. At the close of the case, defendant made a motion that the court direct a verdict for the defendant, on the ground that the testimony showed that the note was simply assigned to the plaintiff, and that, being a negotiable note, the plaintiff, therefore, could not sue in his own name under the statute. Section 10054, 3 Comp. Laws. The motion was overruled, defendant excepted, the case was submitted to the jury, and a verdict for the plaintiff was returned in the sum of $1,573.75, and judgment was entered thereon.

Counsel for the respective parties agree that the assignment of error raises the single question whether the writing found upon the back of the note was such an indorsement as would enable the plaintiff to bring suit thereon in his own name, or whether it was merely an assignment.

The circuit judge, and in fact counsel for both parties, treated the note as a negotiable note under the negotiable instrument act. In this we think they were correct.

Appellant places reliance largely on the case of *Aniba* v. *Yeomans*, 39 Mich. 171, as authority that the plaintiff cannot sue in his own name. It is true that at common law an assignee of a chose in action could not sue in his own name. The statute above referred to gives this right in certain cases, but it expressly excepts negotiable instruments. In the case of such instruments something more than a mere assignment is necessary. There must be a legal indorsement. Was there such in this case?

Counsel for appellee well say that in *Aniba* v. *Yeomans* this court did not hold that a person who receives a negotiable note by virtue of an assignment written on the back of it cannot bring the suit in his own name. That

question does not seem to have been raised in the case. What this court did hold was that Yeomans, having received the note by assignment from Aniba, was not an indorsee of the note, and therefore that he held the note subject to any defense which the makers might have to it in the hands of Aniba. But had the question been raised there, as it is raised here, what would this court have said? It will be unfortunate if we are compelled to reverse this case upon this question, for the merits of the whole controversy seem to have been tried and submitted to the jury, the same as though Mr. Pelton had been the plaintiff instead of Mr. Gale. This statute, however, has been the law of this State since 1863.

As early as 1872, in the case of *Redmond* v. *Stansbury*, 24 Mich. 445, it was held that this statute, permitting an assignee of a chose in action "not negotiable under existing laws" to sue and recover in his own name, did not apply to a case where the plaintiff simply had possession of a negotiable note payable to another. In that case Mr. Justice GRAVES said:

"The reasoning is this: That the act of 1863 allows choses in action to be transferred in the same way as chattels; that this note is a chose in action; and that its possession, like the possession of a horse, was evidence of ownership. The language of the act itself furnishes an explicit answer to this argument. The statute expressly excepted from its operation all papers allowed to be negotiable under the laws as they were before the statute; and the note in suit was of this kind.
"The plaintiff below could, therefore, derive no aid from the law of 1863, and, as he failed to show himself invested with the legal title through any mode recognized by law, the judgment below should be reversed."

This statute is again referred to in *Waldron* v. *Harring*, 28 Mich. 493.

In *Robinson* v. *Wilkinson*, 38 Mich. 299, Susannah Wilkinson brought suit upon a note made by Robinson, and payable to the order of James N. R. Wilkinson. The note was not indorsed, and the plaintiff claimed a right to

recover upon it by showing a verbal assignment of it by the payee to herself for value. Mr. Justice COOLEY said:

"It is not pretended that such a suit could have been maintained at the common law, but reliance is placed upon the statute which provides that 'the assignee of any bond, note or other chose in action, not negotiable under existing laws, which has been or may be hereafter assigned, may sue and recover the same in his own name,' etc. The view of this statute taken by the plaintiff is that it is intended to confer upon assignees of choses in action the right to maintain suits in their own name in all cases; that while a note in the form of the one before the court is in a certain sense negotiable, yet that it is not fully and for all purposes such until after indorsement by the payee, and is therefore within the intent of this statute, and must be considered not negotiable until it is put in position to pass from hand to hand by mere delivery. And it is said with some force there could be no reason for leaving this particular class of paper subject to the common-law rule which required suit to be brought in the name of the payee, when on all other contracts the assignee is permitted to sue in his own name.

"The question, however, is one of statutory construction, and not of the sufficiency of the reasons for making the statute what it is. There is no doubt that such paper is 'negotiable' according to the sense of that word as it is employed in mercantile law. Bills of exchange and notes payable to order or to bearer are equally considered negotiable, though the ceremony of indorsement is required in the one case and not in the other. It is true that paper payable to order and not yet indorsed is sometimes said not to be negotiable until the indorsement is made, but by this is meant only that the indorsement is a necessary ceremony of the process of negotiating it. The term 'negotiable' is one of classification, and does not of necessity imply anything more than that the paper possesses the negotiable quality.

"The statute referred to is an enabling statute, and we cannot enlarge it. Probably in enacting it the legislature went as far as it was supposed there was any necessity for going, namely, to provide for cases in which under common-law rules the assignee could not, by the act of the parties, be empowered to sue in his own name. It was not supposable that any similar enactment was needed for the case of negotiable paper, as the mere act of indorse-

ment, which it is customary to perform in assigning such paper, was all that would be needed. *Redmond* v. *Stansbury*, 24 Mich. 447.

"We think the court erred in giving judgment for the plaintiff, and that the judgment must be reversed, with costs, and a new trial ordered."

See, also, the language of Chief Justice CAMPBELL in *Matteson* v. *Morris*, 40 Mich. 55.

*Spinning* v. *Sullivan*, 48 Mich. 5 (11 N. W. 758), was a suit in equity to correct a note. The note was drawn in proper commercial form, and was made payable to the order of James Sullivan. But no indorsement had been made to the defendant. Whatever title he had obtained was through a separate instrument purporting "to assign, sell, transfer and set over to said Timothy Sullivan, a certain note of Charles Spinning now held by me." Chief Justice GRAVES said:

"In case of the assignment of a chose in action not having the attribute of negotiability, the assignee takes it subject to antecedent equities, and the late provision to permit assignees to sue in their own names has not affected the principle. *Myers* v. *Davis*, 22 N. Y. 489. But commercial paper having the quality of negotiability is privileged, and such of it as belongs to the class of bills of exchange and promissory notes may be transferred in such manner as to give the transferee a better right than was possessed by the party making the transfer. In case the new title is innocent and regular, the law will protect it against prior equities and leave the latter to independent adjustment. But to have this effect the title must accord with the rules which give the immunity. Because if it does not, and pursues simply the style and method allowed by the common law in the case of chattels, the right which follows is no greater than would ensue if the paper was devoid of the character of negotiability, and such ownership as there is will be subject to pre-existing equities.

"The title the defendant Timothy sets up is of this kind. The note was transferable by indorsement, and was not transferred in that way, but by assignment. He obtained no title to enable him to sue except in the name

of the payee"—citing the cases above referred to, and, also, *Gibson* v. *Miller*, 29 Mich. 355 (18 Am. Rep. 98).

See, also, *Brennan* v. *National Bank*, 62 Mich. 347 (28 N. W. 881); *Minor* v. *Bewick*, 55 Mich. 491 (22 N. W. 12).

This question was before this court in *Stevens* v. *Hannan*, 86 Mich. 305 (48 N. W. 951, 24 Am. St. Rep. 125). There the payee of the note transferred it by these words:

"For value received I hereby assign all interest in and to this note to Ralph E. Watson."

Watson transferred it in turn to the plaintiff, for value, before maturity, *by writing his name on the back* and delivering it to him. The defendant there insisted that the plaintiff could not sue in his own name, but should have brought suit in the name of the payee. Upon that branch of the case, Mr. Justice McGRATH said:

"I do not think that the point is well taken. If the effect of Batchelder's indorsement was to make the note thereafter nonnegotiable, then the assignment from Watson to plaintiff entitled plaintiff to sue in his own name, under the statute, and, if Batchelder's indorsement did not affect its negotiability, then Watson's indorsement entitled plaintiff, as holder of the note, to sue in his own name."

This case is easily distinguished from the case we are considering. Had Mr. Gale before maturity, and for value, transferred the note in question by writing his name on the back, and delivering it· to an indorsee, we should have another question before us.

It is said that the circuit judge relied for his course upon the case of *Markey* v. *Corey*, 108 Mich. 184 (66 N. W. 493, 36 L. R. A. 117, 62 Am. St. Rep. 698). In that case the note sued upon was indorsed:

"I hereby assign the within note to Matthew M. Markey and Catherine Sundars."

The point was urged there by the defendant that, if the plaintiffs took title to the note, it was under the assign-

ment, and that therefore they could not sue in their own names; but, if they had a right of action, it must be brought in the name of the original party to the contract. It is well that we bear in mind the difference in the language of the assignment in the case we are considering, and that in the above case. In this case it was:

"I hereby assign *my interest* in this note to Wm. H. Gale."

In the above case it was:

"I hereby assign the *within note*."

Mr. Justice LONG, in the above case, after discussing the matter at some length, said:

"The language used in the assignment to the note in suit does not negative the implication of the legal liability of the assignor as indorser, and as the words are to be construed, as strongly as their sense will allow, against the assignor, he must be held as indorser."

Then, after quoting the language of the assignment in *Aniba* v. *Yeomans* and the language of Mr. Justice MARSTON in that case, he continues:

"In other words, the learned justice seemed to think that the words used limited the transfer to the right and title he then held. While this holding appears to be at variance with the cases elsewhere, *we think it readily distinguishable from the present*, as here the words are, 'I hereby assign the within note,' etc., and do not purport to limit the liability of Corey as an indorser."

We think that the learned circuit judge was in error in relying upon the case of *Markey* v. *Corey*.

But it is urged by counsel for appellee that the old rule has been abrogated by section 40 of the negotiable instrument law (Act No. 265, Pub. Acts 1905), which was adopted in this State before the note in question was made. That provision reads as follows:

"A qualified indorsement constitutes the indorser a *mere assignor of the title to the instrument*. It may be made by adding to the indorser's signature the words 'without recourse,' or any words of similar import. Such

an indorsement does not impair the negotiable character of the instrument."

We have two answers to the above claim:

*First,* that it was held by this court as early as *Borden* v. *Clark,* 26 Mich. 410, that the fact that the vendor of a promissory note indorsed it "without recourse" has no tendency to show that his vendee is not a bona fide purchaser. Nor would the addition of words of "similar import" make any difference. So it is clear that this statute has not changed the rule in this State in that respect. It cannot be said that the words used in the case we are considering were equivalent to an indorsement without recourse.

*Second.* The statute above quoted expressly provides that "a qualified indorsement constitutes the indorser a *mere assignor* of the title to the instrument." Here again we are confronted with section 10054, 3 Comp. Laws, which holds that the *assignee* of a negotiable note cannot sue in his own name. So, whether the negotiable character of this instrument is impaired or not by the assignment, we cannot abrogate this statute, which has been the law of this State nearly 50 years, and has been repeatedly interpreted and cited by this court. That the legislature might wisely repeal it is another matter.

We feel compelled, therefore, to reverse the judgment below, without a new trial.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.