## PRICHARD v. STRIKE et al.

No. 4268.   Decided February 3, 1926.   (243 P. 114.)

1.  TRIAL—REQUESTED INSTRUCTION ON GROUNDS THAT INDORSEMENT WAS QUALIFIED HELD INCONSISTENT WITH CLAIM OF AGREEMENT TO REGARD INDORSEMENT AS QUALIFIED.  Request by defendant for a directed verdict on ground that indorsement as made on note sued on was merely a qualified indorsement, passing only interest of indorser, would be inconsistent with answer setting up an agreement to regard indorsement as qualified, on which theory case was tried.

2.  BILLS AND NOTES—INDORSEMENT, ASSIGNING AND DELIVERING ALL OF INDORSER'S INTEREST IN NOTE, HELD NOT TO CONSTITUTE A

Appeal from Third District

QUALIFIED INDORSEMENT. Indorsement on a note assigning and delivering all indorser's right, title, and interest in note does not indicate an intention not to incur liability as an indorser, and hence does not constitute a qualified indorsement, relieving indorser from personal liability, in view of Comp. Laws 1917, §§ 4067, 4097.

3. BILLS AND NOTES—INDORSER, TO BE RELIEVED FROM LIABILITY AS SUCH, MUST CLEARLY INDICATE SUCH INTENTION IN INDORSEMENT. Under Comp. Laws 1917, §§ 4067, 4097, one indorsing a negotiable promissory note, desiring to disclaim liability of an indorser, must clearly indicate by appropriate words such intention or intention to be bound in some other capacity.

4. APPEAL AND ERROR—COMPETENCY OF EVIDENCE OFFERED, RECEIVED, AND SUBMITTED TO JURY WITHOUT OBJECTION, AND AT REQUEST OF APPELLANT, NOT CONSIDERED. Competency of evidence of oral agreement to show intention not to be bound as an indorser will not be considered, where evidence was offered, received, and submitted to jury without objection and at request of appellant.

5. APPEAL AND ERROR—ASSIGNMENT HELD UNTENABLE, WHERE CONTAINING NO ISSUE RAISED BY PLEADINGS OR DURING TRIAL OR BY CHARGES. Assignment of error, alleging insufficiency of evidence to show notice of dishonor by presentment, demand, and nonpayment of note sued on, is untenable, where no such issue was tendered or raised by pleadings or during trial, no request or charge thereon was made, or exceptions taken for failure to so charge or to charge given. .

6. BILLS AND NOTES—DEFENDANT PAYEE AND INDORSER OF NOTE HELD TO HAVE FULL KNOWLEDGE OF PRESENTMENT, DEMAND AND NONPAYMENT OF NOTE. Defendant payee and indorser of a note made by corporation *held* not entitled to object to insufficiency of evidence to show notice of dishonor by presentment, demand, and nonpayment, where, as president of maker, he had full

Corpus Juris-Cyc. References.

[1] Bills and Notes, 8 C. J. p. 371 n. 33: Expressio eorum quae tacite insunt nihil operatur, 25 C. J. p. 220 n. 16: Expressio unius est exclusio alterius, 25 C. J. p. 220 n. 17: Trial, 38 Cyc. p. 1615 n. 19.

[2, 3] Bills and Notes, 8 C. J. pp. 369 n. 6, 10; 370 n. 24; 371 n. 40 New.

[4] Appeal and Error, 4 C. J. p. 703 n. 75.

[5, 6] Appeal and Error, 3 C. J. pp. 706 n. 37; 850 n. 24; 919 n. 34; 927 n. 55: Bills and Notes, 8 C. J. p. 642 n. 35 New.

knowledge of presentment, demand, and nonpayment of note, and that payee looked to him for payment.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

Action by A. M. J. Prichard against George M. Strike and another. Judgment for plaintiff, and defendant named appeals.

AFFIRMED.

*Stewart, Alexander & Budge,* and *E. A. Walton,* all of Salt Lake City, for appellant.

*Hutchinson & Hutchinson,* of Salt Lake City, for respondent.

STRAUP, J.

The respondent sold to the appellant Strike an apartment in Salt Lake City for $18,000. As part payment of the purchase price Strike transferred and delivered to the respondent a negotiable promissory note in the sum of $8,000 executed by the defendant Weber Sand & Gravel Company, a corporation, by Strike as its president and one Brown as its secretary, and payable to Strike as the payee. The note recited that it was secured by a chattel mortgage of even date therewith. When the note was transferred and delivered to the respondent, which was before its maturity, Strike indorsed it thus:

"For value received, I hereby assign, set over, and deliver unto A. M. J. Prichard all my right, title, and interest in and to the above note, together with the security evidenced by the chattel mortgage of the maker to the payee thereof, of the same date as said note."

The respondent brought this action on the note against the company and Strike. The company defaulted. Strike answered denying his liability on the note, and alleged that in

the transaction with respect to the purchase of the apartment it was agreed by and between the respondent and himself that as a part of the consideration for the purchase the respondent would and did accept the note at its face value with only such an indorsement thereof as would assign his interest in the note to the respondent and without becoming liable otherwise as indorser for its payment; that he was informed by his counsel, and believed and understood, that the indorsement had only such effect, but, after the assignment and delivery of the note to the respondent, he, Strike, was informed that the indorsement was not a qualified indorsement, but in legal effect imposed on him all the liability of an unqualified or general indorser, which, as Strike further alleged, was not the intent or the agreement of the parties. All these allegations were denied by the respondent. Nowhere in the answer did Strike allege that the indorsement on its face was a qualified indorsement or constituted him a mere assignor of the title to the instrument, but averred that, when he made the indorsement, he was told and believed that it had only such effect; that he thereafter was informed the legal effect was to make him an unqualified indorser, and as such liable for the payment of the note, but that such was not the intention of the parties.

Without objection, evidence was given by Strike tending to support his claim that in transferring the note he was merely to be an assignor of the title of the note, while, on the other hand, the respondent, without objection, gave evidence to the contrary and as tending to support the claim of respondent that the indorsement was understood and intended to be an unqualified indorsement with all the imposed liabilities of such an indorser. In submitting the case to the jury, the court instructed them that the indorsement on its face was not a qualified indorsement, but by reason thereof Strike became liable as an indorser for the payment of the note, unless the jury found that the respondent, by an express agreement had with Strike, agreed to accept the note "with such an indorsement thereon as would relieve the defendant Strike from any personal liability thereon as indorser or otherwise and

at the same time would pass title to the note to plaintiff.'' The jury rendered a verdict in favor of the plaintiff. Strike alone appeals.

On the appeal it is chiefly claimed by him that the indorsement was a qualified indorsement, and constituted him a mere assignor of the title to the note, and that hence the court erred in refusing to give his request to peremptorily direct a verdict in his favor and in charging the jury, as was done, that the indorsement on its face was not a qualified indorsement, but one which rendered Strike liable as an unqualified indorser.

At the threshold the respondent urges that the making of such claim by appellant constitutes a changing of position by him, and on the appeal as urging a theory different from that alleged in his answer, and on which the case was tried, in that he, in his answer in the court below, did not claim or allege that the indorsement as made was on its face a qualified indorsement or one which merely constituted him an assignor of title, but that, as he was informed, the indorsement in legal effect was an unqualified indorsement, and as such rendered him liable as an indorser, but that the parties did not intend that the indorsement should have such effect, and on such theory, and in accordance with his answer, the court submitted the case to the jury and not otherwise. There is much force to the respondent's contention.

It undoubtedly is true that the court, on appellant's theory, and as alleged by him, submitted the case to the jury, who, on such submission, rendered a verdict against him. Nowhere did the appellant request the court to charge the jury that the indorsement constituted him a mere assignor of title. All of his requests were bottomed on the hypothesis that, if the jury found that an agreement was had as alleged in the answer, their verdict should be for appellant. The substance of such requests was given. Whether there was such an agreement the evidence is in direct conflict. No claim is made that the verdict in such particular is contrary to the evidence or that there is not sufficient evidence to support it. All that is claimed in such respect is that the verdict is against the

"preponderance" of the evidence. The appellant here, of course, urges that the claim that the indorsement constituted him a mere assignor of title was embraced in his request to direct a verdict in his favor. The request was a mere blanket request to peremptorily direct a verdict in his favor without stating any grounds therefor. To have given the request on such ground as now claimed would have been inconsistent with appellant's answer and the theory on which the case was tried.

However, we have concluded to consider the case on the theory as here presented, and, in doing so, we shall, on the record, review the court's ruling refusing appellant's request for a peremptory direction of the verdict and the charge of the court that the indorsement on its face was not a qualified but a general indorsement. The alleged error of the court in such particular is predicated on the claim that the legal effect of the indorsement merely constituted appellant an assignor of title and otherwise did not render him liable as an indorser.

Indorsements of similar wording and the legal effect of them have been before the courts in a number of cases both before and after the adoption of the Uniform Negotiable Instruments Law. The cases are in irreconcilable conflict.

To support his contention the appellant chiefly cites and relies on *Hailey* v. *Falconer,* 32 Ala. 536; *Aniba, etc.,* v. *Yeomans,* 39 Mich. 171; *Gale* v. *Mayhew,* 161 Mich. 96, 125 N. W. 781, 29 L. R. A. (N. S.) 648; *Hammond Lbr. Co.* v. *Kearsley,* 36 Cal. App. 431, 172 P. 404; *Evans* v. *Freeman,* 142 N. C. 61, 54 S. E. 847; *Spencer* v. *Halpern,* 62 Ark. 595, 37 S. W. 711, 36 L. R. A. 120; *Ellsworth* v. *Varney,* 83 Ill. App. 94.

The respondent cites *Copeland* v. *Burk,* 59 Okl. 219, 158 P. 1162, L. R. A. 1917A, 1165; *Farnsworth* v. *Burdick,* 94 Kan. 749, 147 P. 863; *Sears* v. *Lantz & Bates,* 47 Iowa, 658; *Maine Tr. & Banking Co.* v. *Butler,* 45 Minn. 506, 48 N. W. 333, 12 L. R. A. 370; *Markey* v. *Corey,* 108 Mich. 184, 66 N. W. 493, 36 L. R. A. 117, 62 Am. St. Rep. 698; *Quinn* v. *Rike,* 50 Cal. App. 243, 194 P. 761; *Behrens* v. *Kirkgard* (Tex.

Civ. App.) 143 S. W. 699; *Citizens' Nat. Bank* v. *Walton*, 96 Va. 435, 31 S. E. 890, and 1 Daniel, Negotiable Instruments (6th Ed.) § 688c.

In 8 C. J. 371, the author, in considering indorsements of words of similar import as "without recourse," says:

"The words most frequently involved are 'all my right, title and interest,' or like words, as where the indorsement is, 'I hereby assign all my right, title,' etc. As to the effect of using such words the decisions are in conflict. In Arkansas, Illinois, and North Carolina, such words are held to make the indorsement a qualified one and to exempt the indorser from liability on the theory that, having expressed one of the two legal implications flowing from a general indorsement, the indorser is deemed to exclude the other implication. On the other hand, the contrary is held in Iowa, Ohio, Texas, and Virginia, and there are dicta to that effect in Michigan and Minnesota."

In *Farnsworth* v. *Burdick*, supra, the Kansas court, holding with the latter cases referred to in C. J., supra, says:

"The authorities seem to be in utter and hopeless confusion concerning the effect of the transfer of a negotiable instrument by words like those used here. [I hereby assign this note over to E. H. Farnsworth, etc.] This confusion existed prior to the passage of the Uniform Negotiable Instruments Law, and still exists. The weight of authority was, and is, that this is a commercial indorsement. We are of the opinion that the 'assignment' of this note is an indorsement thereof, under the Negotiable Instruments Law."

The theory on which the cases cited by appellant proceed is perhaps best stated in *Spencer* v. *Halpern*, supra, to be that, while an indorsement in blank not only transfers the title and interest of the indorser, and gives the indorsee rights against the maker which the payee himself might not have, and imposes upon the assignor all the legal obligations of an indorser, including the obligation to pay the amount called for by the instrument, if not paid by the principal, provided notice of demand and nonpayment be given, still, where the indorsement was not in blank by merely signing the name of the transferee, but as here by words of assignment of title, the legal effect of the indorsement must be determined alone by such language, and by expressing only one of the implications which the law attaches to an indorsement

in blank or in full excludes every other; and on such theory the appellant urges that he by the indorsement expressed only one of the implications which the law attached to an indorsement; a mere indorsement of title to the note and of his interest therein, and hence he thereby excluded all other implications including the one to pay the note on nonpayment thereof by the maker.

The theory on which the cases cited by the respondent proceed is perhaps best stated by Daniel, supra. He says:

"The question arising in such cases is a nice one, and depends upon rules of legal interpretation. The mere signature of the payee indorsed on the paper imports an executed contract of assignment, with its implications, and also an executory contract of conditional liability with its implications. The assignment would be as complete by the mere signature as with the words of assignment written over it. The conditional liability which is executory is implied by the executed contract of assignment, and the signature under it, which carries the legal title. And the question is: Does the writing over a signature on express assignment which the law imports from the signature per se exclude and negative the idea of conditional liability which the law also imports if such assignment were not expressed in full? · We think not. It is from the fact that a payee assigns a bill or negotiable note by indorsement of his name on the back of it, that the law implies his liability as an indorser. His relation to the instrument creates the implication, and the circumstance that he sets forth that relation in express terms does not change it, for the maxim applies, 'Expressio eorum quæ tacitæ insunt nihil operatur.' Did the payee intend merely to pass the title he should use the words 'without recourse,' or some phrase of equal import. His liability is implied without words expressly creating it. To be negatived, words should be used which negate the implication. If the executed contract created implications of several executory contracts then the expression of one of these implications might exclude others of the like class, by application of the maxim, 'Expressio unius, est exclusio alterius.' But when the thing done creates the implication of another to be done, we cannot think that the mere expression of the former in full can be regarded as excluding its consequence when that consequence would follow if the expression were omitted. The executory contract of the indorser to pay in the event of dishonor and notice has never in any case that we are aware of been written in full. And if the language does not negate that universally accepted implication it should be remembered that words are to be

construed as strongly as their sense will allow against those using them; and the question resolved accordingly."

The same thought is expressed by the author in 1 Edwards, Bills and Notes (3d Ed.) 284, wherein he says that, while any form of words will answer the same purpose as the words "without recourse," by which the party indorsing "disclaims the responsibility of an indorser, the words used must clearly express the intention not to incur liability as indorser." So, too, by Eaton & Gilbert, § 61, wherein they say that, "if it be the intent of the parties that an indorsement should be without recourse to the indorser, such intent should be clearly expressed in the indorsement itself."

Thus the cases of the appellant apply the familiar maxim, "Expressio unius, est exclusio alterius," while the cases cited by the respondent apply the maxim, "Expressio eorum quæ tacitæ insunt nihil operatur"—the expression of what is tacitly implied is inoperative, or, as sometimes stated, "the expression of a clause which the law implies works nothing."

We are inclined to and adopt the view expressed by Daniel. That, too, is, as we think, the intent of our statute (Comp. Laws Utah 1917, § 4067), providing that a qualified indorsement constitutes the indorser a mere assignor        2 of the title to the instrument, and may be made by adding to the indorser's signature "the words 'without recourse' or any words of similar import," and by section 4097 providing that a person placing his signature upon an instrument, otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. Thus we think that one indorsing a negotiable promissory note and desiring to disclaim the responsibility of an indorser must, by appropriate words, clearly indicate such an intention or an intention to be bound in some other capacity, and that he does not do so by language as here assigning and delivering all his right, title, and interest in the note which is nothing more than what the law implies from a blank or general indorsement without words creating the implication, and hence is but the expression of a clause which the law implies, and works nothing.

So viewing the matter we do not find anything in the indorsement whereby any intention not to incur liability as indorser is expressed or the universally accepted implications negatived which were created by appellant's relation to the instrument. We therefore think no error was committed in either of these rulings.

As to the competency of the evidence received respecting such an oral agreement as is alleged in the answer we express no opinion, since such evidence was offered and received and the question of whether there was such an agreement submitted to the jury without objection and at the request of the appellant.

Error is also assigned on the alleged insufficiency of evidence to show the giving of notice of dishonor by presentment, demand, and nonpayment. The assignment is untenable for several reasons. First, no such an issue was tendered or raised by the pleadings; no such claim was made by the appellant during the trial; neither party requested the court to charge, nor did the court charge, on any such subject; nor was there any exception taken or complaint made of the court's failure or omission to so charge; nor was there any complaint made or exception taken to the portion of the court's charge that the only issue submitted to the jury was with respect to the indorsement and the circumstances under which it was made. In view of all that, there is no pertinency to the assignment. In the second place sufficient notice was given to appellant of presentment and nonpayment of the note. Further, he was president of the company, the maker of the note, and had full knowledge of the presentment, demand, and nonpayment of it, and in most positive language was told that the plaintiff looked to him for payment of it.

We are therefore of the opinion that the judgment of the court below should be affirmed, with costs. Such is the order.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.