DIVELBISS *v.* BURNS *et al.*

(In Banc. Dec. 14, 1931.)

[138 So. 346. No. 29613.]

**Loving & Loving,** of Columbus, for appellant.

**Sims & Tharp**, of Columbus, for appellees.

**Griffith, J.**, delivered the opinion of the court.

On January 27, 1930, J. L. Burns executed and delivered unto appellee E. S. Jones a promissory note, due on August 30, 1930. Embraced in the same document with the note is a chattel mortgage on certain personal property, therein described, to secure the payment of the indebtedness evidenced by said note. Before maturity, and on May 5, 1930, said payee indorsed and delivered the note and its security to appellant, Divelbiss; the indorsement being on the back of said note in the following words: ''This is to certify that I have this day sold all my right, title and interest to the within note

and mortgage to L. B. Divelbiss, as part payment on radio. This 5-5-30. E. S. Jones.''

The maker, Burns, failed to pay the note when and after due, and appellant sued him and the indorser, Jones. The latter defended on the ground that he was not liable as an indorser in due course; that his contract was solely as stated in the writing above his signature, which, as he contends, was that he was simply an assignor of whatever right, title and interest he had in said note and security,—that, having so expressed himself in said writing, he is liable for nothing beyond that language. That is the sole question in the case,—that is, whether the indorsement is a general commercial indorsement, or, on the other hand, is qualified as one without recourse.

The decisions are in direct conflict upon the point. The following cases sustain the contention that such an indorsement is a special or qualified indorsement, is a simple assignment without recourse: Spencer v. Halpern, 62 Ark. 595, 37 S. W. 711, 36 L. R. A. 120; Hailey v. Falconer, 32 Ala. 536; Evans v. Freeman, 142 N. C. 61, 54 S. E. 847; Hammond Lbr. Co. v. Kearsley, 36 Cal. App. 431, 172 Pac. 404; Ellsworth v. Varney, 83 Ill. App. 94; Aniba v. Yeomans, 39 Mich. 171; Gale v. Mayhew, 161 Mich. 96, 125 N. W. 781, 29 L. R. A. (N. S.) 648. The argument of those cases is that, since an indorsement in blank, by the signature alone, is all that is necessary to express a general indorsement, then why use so many additional words if a general indorsement was intended, that something more than the intention to incumber the paper with useless language must be ascribed to the parties; and that, since in using the additional words only the terms of a simple assignment are expressed, the contract must be construed as limited to those words. These cases apply, therefore, the maxim, ''Expressio unius est exclusio alterius.''

The following cases maintain the opposite view: Sears v. Lantz, 47 Iowa, 658; Maine Co. v. Butler, 45 Minn. 506, 48 N. W. 333, 12 L. R. A. 370; Citizens' Nat. Bank v. Walton, 96 Va. 435, 31 S. E. 890; Behrens v. Kirkgard (Tex. Civ. App.), 143 S. W. 698; Markey v. Corey, 108 Mich. 184, 66 N. W. 493, 36 L. R. A. 117, 62 Am. St. Rep. 698; Quinn v. Rike, 50 Cal. App. 243, 194 Pac. 761; Copeland v. Burk, 59 Okla. 219, 158 Pac. 1162, L. R. A. 1917A, 1165; Prichard v. Strike, 66 Utah, 394, 243 Pac. 114, 44 A. L. R. 1348; Adams v. Blethen, 66 Me. 19, 22 Am. Rep. 547. The argument of those cases is that the signature of a payee indorsed on a note operates, in law, to connect the said party therewith in three relations: (1) As a warrantor of genuineness and of right and title; (2) as an assignor; and (3) as an obligor for the payment of the note if the payer fails to pay. When, therefore, the indorser uses additional words expressive simply of assignment, which the law already attaches to his signature without the words so used, the words are in effect surplusage; and there is applied the maxim, "Expressio eorum quae tacite insunt nihil operatur"— the expression of what is implied without the expression is inoperative, or, as sometimes stated, the expression of that which the law implies works nothing. Since the indorser, in expressing the fact in additional words that he assigns or had assigned the note, expresses in that respect what the law in that same respect ascribes to his signature, and since such words do not in terms negative the other implication imported into the transaction by force of the law, the cases last cited hold that the implications of law other than the assignment are not thereby excluded. The weight of authority, as well as the majority of the text-writers, take the view sustained by the line of cases last cited.

We think that, whatever doubt might formerly have been entertained, whatever difficulties may heretofore

have existed in deciding between the two lines of argument above mentioned, the question is now largely relieved from those difficulties by reference to our modern uniform negotiable instruments statutes. Section 2694, Code 1930, is as follows: "A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse' or any words of similar import. . . ." And section 2719 reads: "A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

These two sections must be read together, and their purpose and requirement is that, when an indorser intends to qualify his indorsement, and, instead of using the words "without recourse," he attempts to avail of others of similar import, those other words must be such as to clearly express that intention; that is to say, the words used must be of sufficient clearness as to leave no fair doubt upon that issue. It is not enough that an inconclusive inference or deduction may be drawn from the words used; and it is therefore not enough that words are used which simply express an assignment and are silent upon the other features which the signature imports into the engagement. The feature of conditional liability is imported into the engagement, unless words are used which clearly indicate to the contrary, and, since words to the latter effect are required, we cannot accede to the contention that the absence of such words is the equivalent of their presence. The avoidance of a general indorsement can be accomplished only by express terms dealing clearly with that issue, not by words which go only to another distinct feature of the transaction—in brief, the negative of a general indorsement must be express and not merely by inference.

The argument is stressed in this case by appellee that the language of this particular indorsement is in the past tense, thus indicating that the transaction was thereby closed, that it rested in the past so far as the indorser was concerned, with nothing in contemplation as to the future or future events or contingencies. We have been able to find only one case in the books where an indorsement of this kind was in the past tense, and that case is Adams v. Blethen, 66 Me. 19, 22 Am. Rep. 547, cited supra. Upon examination, that case is found, however, to be one of the strongest among those for the maintenance of liability as a general indorsement. We do not regard the distinction between language in the past tense as compared with that in the present tense as being substantial enough to become the basis of a difference in rule or decision. We are of the opinion, therefore, that the indorsement in this case is a general indorsement in due course.

It may be that, in holding the indorser liable in this case, the result will be to the contrary of what the indorser intended at the time of the transaction—that a hardship is imposed by the view we herein uphold. But the privilege of freedom of contract is subject, of course, to reasonable and practicable general rules of law, to be prescribed by statute, or else by universal custom and usage, which will make contractual transactions secure and free from uncertainties. Thus we have statutes upon the formalities necessary to the conveyance of land, the making of wills, there is the statute of frauds, and many others prescribing the methods and the only methods by which the contracting parties can effectuate their intentions within the law. And the necessity for such general regulations in respect to commercial paper is of no less importance than some of the other matters mentioned. The provisions of the statutes on that subject, as well as on all these important subjects, must be observed as written, and, as said in Citizens' Nat. Bank

v. Walton, supra, "they ought not to be frittered away by nice distinctions to meet the hardships, real or supposed, of particular cases."

Reversed and remanded.

**Ethridge, J.,** delivered a dissenting opinion.

In my opinion, the reasoning of the cases of Spencer v. Halpern, 62 Ark. 595, 37 S. W. 711, 712, 36 L. R. A. 120; Hailey v. Falconer, 32 Ala. 536; Evans v. Freeman, 142 N. C. 61, 54 S. E. 847; Hammond Lbr. Co. v. Kearsley, 36 Cal. App. 431, 172 Pac. 404; Ellsworth v. Varney, 83 Ill. App. 94; Aniba v. Yeomans, 39 Mich. 171; Gale v. Mayhew, 161 Mich. 96, 125 N. W. 781, 29 L. R. A. (N. S.) 648, presents the sounder view, and should be followed, as the courts of other states are divided upon the proposition.

It appears to me that the language of the indorsement, viz. "This is to certify that I have this day sold all my right, title and interest to the within note and mortgage to L. B. Divelbiss, as part payment on radio. This 5-5-30, E. S. Jones," is a qualified indorsement, and I think it is too clear for question that the purpose was merely to sell whatever right, title, and interest to the note that Jones possessed.

It is almost universally known, and is known to all dealers in commercial paper, that the simple writing of one's name on the back of a note carries with it, without more, a general indorsement which warrants the genuineness of the paper indorsed; the genuineness of the prior indorsement thereon; and an agreement that, if it is not paid at maturity, on notice of this fact, the indorser will pay it.

Why should more be written, unless a limitation of the general liability is desired?

In my opinion, no banker or experienced business man, who was buying paper on the faith that the creditor or

owner selling it would pay it, would accept this indorsement. He would only be willing to accept this indorsement when he was willing to look to the maker and prior indorsers for payment.

The indorsement in the case at bar is substantially that of the cases above referred to. In the case of Spencer v. Halpern, supra, the indorsement was: "For value received, I hereby transfer my interest in the within note to Isaac Halpern," and the court held this was not a general indorsement and that there was no liability on the seller as indorser.

In the case of Spencer v. Halpern, supra, quoting from Tiedman on Commercial Paper, section 265, it was said that: "The declaration that the payee assigns or transfers all his right, title, and interest in the paper would seem to limit in a most effective way the rights acquired by the transferee, to those which the transferor had therein, and thus prevents the writing from operating as an indorsement."

In the case of Hailey v. Falconer, 32 Ala. 536, it was said: "A qualified endorsement is one which does not affect 'the negotiability of the instrument, but simply qualifies the duties, obligations and responsibilities of the endorser, resulting from the general principles of law.' Any words in an endorsement, which clearly demonstrate the intention of the endorser to make it a qualified one, will have the effect to make it such." The indorsement in this Alabama case was substantially the same as the one in the case at bar.

In the case of Aniba v. Yeomans, supra, the indorsement was: "I hereby transfer my right, title and interest of the within note to S. A. Yeomans." The court said (page 172 of 39 Mich.): "The endorsement upon a negotiable promissory note is something more than the mere transfer of the interest of the payee therein. It includes also the personal undertaking of the endorser that if the note is not paid at maturity, upon notice of

that fact he will pay the same. Indeed it goes farther and may pass a perfect title to the endorsee and enable him to recover from the makers, in cases where the payee could not have recovered. The right or interest passing therefore under the usual and customary endorsement is much greater than the mere right, title and interest of the payee, and where the transfer as made only attempts to pass the title and interest of the payee of the note, no greater right or interest than he then held can pass.''

In the case of Ellsworth v. Varney, 83 Ill. App. 94, the court held an indorsement, ''For value received, I hereby convey my right, title and interest in within notes to E,'' to be a qualified indorsement, and to express no further intention than to pass the title and interest which the indorser had in the notes at the time. See further discussion at page 98.

In the case of Gale v. Mayhew, 161 Mich. 96, 125 N. W. 781, 29 L. R. A. (N. S.) 648, the court held an assignment: ''I hereby assign my interest in this note to——'' to be a mere assignment. See distinctions in indorsements discussed in this case.

I think, therefore, that it was the intention of the seller of the note and mortgage in this case to merely pass his interest in and to the note and mortgage, and not to make himself liable personally therefor.

The character of the writing here involved was well settled, I think, at common law, or the law merchant, to be a qualified indorsement. The law merchant originated in England where the people are divided into classes recognized by the law, and from early times until the American Revolution it was the practice of the courts to construe doubtful words in favor of the rich. With the American Revolution, a different theory of human rights arose, and was established, and equality in all respects before the law became the established principle of our government. However, in some states the

judiciary was not entirely in sympathy with this American spirit, and looked to the ancient English law for guidance; but, as stated above, words of similar import to these used in the present case were held to be a qualified indorsement, or a mere assignment without general liability as a general indorser.

I do not think the Negotiable Instruments Law quoted from in the main opinion ought to be construed so as to make it difficult for a man to write a limited indorsement.